DOROTHY LAMB ET AL. *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION
(12730)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued November 5, 1986—decision released January 27, 1987

*Eugene A. Cooney,* for the appellant (defendant).

*William R. Moller,* with whom were *Wesley W. Horton* and *Mario Paul Mikolitch,* for the appellees (plaintiffs).

SHEA, J. This action was brought against the commissioner of transportation for the state of Connecticut pursuant to General Statutes § 13a-144 to recover for personal injuries sustained by the plaintiffs when the car in which they were riding passed over an ice patch, swerved out of control, and collided with a bridge abutment. Following a jury trial bifurcated on the issues of liability and damages, the court rendered judgment in accordance with verdicts in favor of the plaintiffs awarding them a total of $342,500. This appeal concerns various issues relating to the trial court's (1) restrictions upon the defendant's voir dire examination of prospective jurors, and (2) jury instructions that negligence on the part of the state police could provide a basis upon which to find against the defendant. We find error with respect to the first issue only and remand for a new trial.

The following facts do not appear to be in dispute: On a Saturday afternoon, January 22, 1983, the plaintiff Dorothy Lamb was driving her car on Route 2A in Preston. Her three children, also plaintiffs, were passengers in the car. At approximately 4:15 p.m., the plaintiffs' car, after having rounded a curve in the road near the Brookside Inn, skidded across an ice patch and struck a guard post and a concrete bridge abutment. As a result of the accident, all of the plaintiffs were seriously injured.

At about 3 p.m. on the same day, Jean Webster had been driving past the Brookside Inn on Route 2A when her car slid across ice and barely missed careening into an embankment. A few minutes later she told her hus-

band of this incident, which he immediately reported to the state police. Although the state police had "had a couple of complaints on that already," only then, at approximately 3:30 p.m., did they assign a state trooper, Gerald Luty, to investigate the road condition in the area of the Brookside Inn. Luty arrived at the inn within ten minutes, saw that "one or two . . . vehicles as they came around the corner slid a little bit on the ice," and, considering the road condition to be hazardous, radioed the barracks requesting that a sand truck be sent. Luty next lit some warning flares rated to burn for thirty minutes and placed them in the highway fence posts and on the ground. Expecting that the sand truck would arrive before the flares had expired, Luty left the scene to check another area. The accident involving the plaintiffs occurred before the sand truck arrived, but after the flares had expired.

After having received Luty's request that a sand truck be sent to the Brookside Inn, the desk officer at the state police barracks telephoned Llewellyn Palmer, a department of transportation (DOT) supervisor, at his home, in accordance with a procedure that had been established between the DOT and the state police. Because DOT offices are staffed only Monday through Friday from 8 a.m. to 3:30 p.m., the DOT distributes to state and local police a list of the home telephone numbers of DOT maintenance employees for use at other times. Palmer called Roland Gauthier, his crew leader, at about 3:45 p.m., assigning him the task of sanding along Route 2A "and other spots." Gauthier then called a coworker for assistance before driving approximately five miles to the DOT garage. At the garage, after having waited for his coworker for about ten minutes, Gauthier received a radio call directing him to go immediately to Route 2A from a DOT superintendent who had come upon the plaintiffs' accident.

# I

The defendant attempted to ask the following questions during the voir dire examination of a prospective juror: (1) "If you knew nothing else about a case coming in here to be a juror except that the plaintiff was injured, now would you on that basis alone think that the jury ought to give that person some money?" and (2) "[I]f you met a person when you were walking down the street and that person exhibited some signs of injury or was disabled, would you feel feelings of sympathy for that person?" The court sustained the plaintiffs' objections to those questions because the former, it said, "infring[ed] on one of the areas that is not permitted, that is, the juror's knowledge of the law," and the latter "is irrelevant on the issue of prejudice."[1] The defendant contends that the trial court thus erroneously thwarted the defendant's legitimate objective of determining which prospective jurors were most apt to be hindered in making factual assessments at trial by feelings of sympathy. We agree.

[1] The trial court's full explanation was as follows:

"I just want to put on the record with respect to Mr. Cooney's first point as to whether the juror would give money to somebody just because they were injured, basically that is one of the—infringing on one of the areas that is not permitted, that is, the juror's knowledge of the law. That's asking him, in effect, Do you know what the law is with respect to when you may give damages and when you may not award damages to the Plaintiff?

"With respect to the second question as to whether the person is a sympathetic person or not, that really is irrelevant on the issue of prejudice; and the question really is, Would the person set aside the sympathy they feel and follow the law?

"Now, it obviously would be very helpful to counsel to know which are the most sympathetic jurors and ask them to rate themselves on a scale of one to ten. Then the Defendant would put those—all those who rate themselves below five for the Defendant. The Plaintiff would pick all those who rate themselves higher than ten for sympathy, but that's not what the purpose of the voir dire is; and that's why the Court will sustain the objection to those two questions."

Section 19 of article first of the constitution of Connecticut, as amended by article IV, states in part: " 'The right of trial by jury shall remain inviolate . . . . In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate.' " See *State* v. *Marsh,* 168 Conn. 520, 521, 362 A.2d 523 (1975). Further, General Statutes § 51-240 provides in part: "(a) In any civil action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto." We have stated that although the trial court is vested with wide discretion in respect to the extent of the voir dire examination, the court should grant such latitude as is reasonably necessary to accomplish the purposes of the voir dire. " 'Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. . . .' *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152 (1956)." *State* v. *Rogers,* 197 Conn. 314, 318, 497 A.2d 387 (1985).

In this case, the issue of whether feelings of sympathy would influence the jury's determinations was particularly significant. The plaintiffs had suffered severe personal injuries that included bone fractures and disfiguring facial lacerations. Moreover, it was indicated to the jury that the three plaintiffs who are the adult children of the named plaintiff are mentally retarded and, consequently, are especially dependent upon her. The evidence further showed that, because he had

recently suffered a stroke, the husband of the named plaintiff was also greatly dependent upon her, and that as a result of the accident her ability to assist him had substantially diminished. When a considerable potential exists for feelings of sympathy to have a bearing upon the outcome of a case, a query seeking to uncover the extent of a juror's susceptibility to such feelings should be permitted.[2] It was of vital importance to the defendant that any such susceptibility be brought to light. "He was entitled to explore this area of possible disqualification prior to the impanelling of the jury. Only then could he intelligently challenge for cause or exercise his right of peremptory challenge." *State* v. *Hill,* 196 Conn. 667, 673, 495 A.2d 699 (1985).

The first question of the defendant precluded by the trial court upon the plaintiffs' objection was whether the juror, knowing only that the plaintiff had suffered an injury, would think that the jury ought to award damages. The court stated that it was sustaining the plaintiffs' objection because the question sought, in

---

[2] The defendant's counsel explained to the trial court his reasons for asking the questions at issue:

"[T]he jurors will not say in so many words that they will not follow the law of the Court, but, on the other hand, Your Honor, if certain other questions are asked, for example, the very first one that I asked whether the juror would be inclined or whether the juror would award money to an injured party simply knowing that party was injured and on that basis alone give him money, Your Honor, I think that goes to the type of prejudice which a juror might have which would perhaps overcome any good intention that the juror might have in agreeing to follow the law; and the same goes, I think, Your Honor, for the question regarding sympathy.

"Again I think that asked the questions—asked the particular question in so many words whether the juror would put sympathy aside in deliberating on the issues, any juror—potential juror would say, of course, they would put sympathy aside, but unless counsel is allowed to inquire into the area of sympathy and whether the potential juror feels sympathy and the degree to which the potential juror feels sympathy for injured or disabled people, that the true flavor of the juror's perceptions of injury and how those perceptions will affect the deliberating process are not going to come forth."

effect, to elicit the juror's knowledge of the law. It is true that a juror's knowledge or ignorance with respect to questions of law is not a proper subject of inquiry on voir dire. *State* v. *Anthony,* 172 Conn. 172, 176, 374 A.2d 156 (1976); *State* v. *Clark,* 164 Conn. 224, 226, 319 A.2d 398 (1973); *Duffy* v. *Carroll,* 137 Conn. 51, 56–57, 75 A.2d 33 (1950). " '[A]ll too frequently such inquiries represent a calculated effort on the part of counsel to ascertain before the trial starts what the reaction of the venireman will be to certain issues of fact or law or, at least, to implant in his mind a prejudice or prejudgment on those issues. Such an effort transcends the proper limits of the voir dire and represents an abuse of the statutory right of examination.' *State* v. *Mendill,* 141 Conn. 360, 362, 106 A.2d 178 [1954]." *State* v. *Clark,* supra, 226.

The question posed in the present case, however, did not call for a statement by the prospective juror of what he thought the law was. The case of *Duffy* v. *Carroll,* supra, is instructive. In *Duffy* it was alleged that the defendant's car had struck the six year old plaintiff as a result of the defendant's negligent driving. The trial court had overruled the defendant's objections to the following question posed during the voir dire by the plaintiff's counsel: " 'Do you feel that a six year old boy is expected to use as much care and caution in crossing a street as an adult person twenty-one years of age?' " Id., 55. This court upheld the trial court's rulings, stating that rather than eliciting the veniremen's knowledge of the law, the questions "were designed to expose the jurors' ideas of what they in their own minds would expect by way of care from a young boy as contrasted with an adult. The questions were calculated to disclose what the natural mental reactions of the jurors were and their abilities to discriminate. From the answers, counsel could gain impressions upon which he could decide whether he should exercise a

peremptory challenge." Id., 57. We conclude by analogy that the defendant's questions in the present case sought merely to uncover the juror's initial sympathetic impulse and natural mental reaction to another's injury. Such potentials for bias are proper subjects of inquiry in the voir dire examination.

The second question that the trial court disallowed was whether the juror would feel sympathy for a person encountered on the street who exhibited signs of injury. The court reasoned that the question was irrelevant on the issue of prejudice, saying "the question really is: 'Would the person set aside the sympathy they feel and follow the law?' " Although a prospective juror of normal heart and reasonable mind would scarcely be likely to answer the defendant's question in the negative, the defendant certainly had a right to this inquiry in order to gauge juror reactions, and thereby to forage for possible prejudices and unusual levels of sympathy. The alternative question framed by the trial court, though perhaps more to the point, was not the defendant's exclusive conduit for discovering the propensities of the prospective jurors.

Where broad discretion is vested in the trial court, only an abuse of such discretion resulting in harmful prejudice will constitute reversible error that is ground for a new trial. *State* v. *Rogers,* supra, 318; *State* v. *Anthony,* supra, 176–77. In the circumstances of the present case, because the defendant's questions on voir dire were not answered, it is impossible for the defendant to show that he could have discovered information that would have justified a challenge for cause or induced him to exercise a peremptory challenge. Thus, we cannot conclude that the trial court's restrictions placed upon the defendant's voir dire examination were not harmfully prejudicial. Cf. *State* v. *Anthony,* supra, 177. Neither can we agree with the plaintiffs that the bifurcation of the trial on the issues

of liability and damages must have sufficiently reduced the role sympathy may have played in the outcome of the case so as to render such restrictions harmless. We note that the same jury was impaneled for both issues.

## II

While the conclusion reached above requires us to order a new trial, we discuss the various issues raised by the defendant in connection with his remaining claim to the extent that these may arise at a new trial. See *Sanderson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 143, 491 A.2d 389 (1985); *State* v. *Keiser,* 196 Conn. 122, 131, 491 A.2d 382 (1985).

## A

The plaintiffs brought their suit under the authority of General Statutes § 13a-144, which allows a person injured "through the neglect or default of the state or any of its employees by means of any defective highway . . . which it is the duty of the commissioner of transportation to keep in repair" to bring a civil action against the defendant commissioner. The defendant's general claim is that the trial court erred in instructing the jury that negligence on the part of the state police could provide a basis for finding the defendant liable under § 13a-144.[3] We disagree.

---

[3] "[General Statutes] Sec. 13a-144. DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter

"The primary rule of statutory construction is that '[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . and thus there is no need to construe the statute . . . .' *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978)." *State* v. *Smith,* 194 Conn.

to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of."

The following are relevant portions of the trial court's jury charge:

"The question is, did the State have reasonable time to safeguard the scene or to remedy the defect? Now, remember, the statute says, 'Any person injured . . . through the neglect or default of the State or any of its employees by means of any defective highway . . . which it is the duty of the Commissioner of Transportation to keep in repair . . . .'

"[W]ith regard to neglect or default in duties, did Trooper Luty when he got to the scene, saw the ice, concluded it was dangerous enough to call for a sand truck, did he act reasonably in putting out flares that he expected to last one half hour and then leave the scene or should he have done more to safeguard the scene until the sand truck arrived?

"Now, you have to decide whether it was reasonable for him to do what he did or whether or not he should have done more than that and either stayed or done something else at the scene until the sand trucks actually

213, 221, 479 A.2d 814 (1984). " 'Where the language used by the legislature is plain and unambiguous, there is no room for construction by the courts and the statute will be applied as its words direct.' *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980)." *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 135, 479 A.2d 231 (1984). "As Justice Holmes put it in *Roschen* v. *Ward,* 279 U.S. 337, 339, 49 S. Ct. 336, 73 L. Ed. 722 (1929): '[T]here is no canon against using common sense in construing laws as saying what they obviously mean.' " *State* v. *Roque,* 190 Conn. 143, 153, 460 A.2d 26 (1983).

got there, although I do have to remind you again he did not know an accident was going to occur at either 4:12 or 4:17 [p.m.]. So, knowing what he knew at the time is the way you have to consider that question.

"If you find that he should have stayed or he should have done something to protect the scene until the sand trucks arrived, then you could find that the State was in neglect or default of its duties; and if you find everything else, that is, due care on the part of the Plaintiff and the other factors I mentioned, you should find for the Plaintiff. If you find he did what was appropriate and reasonable under the circumstances, then in that regard to that question, you should find for the Defendant."

The trial court later elaborated:

"So, what [§ 13a-144] is saying, if any State employee is injured or, rather, if any person is injured through the neglect or default of any State employee whether State Police or anybody else by means of a defective highway, that is, if their negligence or their default in performing their duties has to do with a defective highway, then the person may sue the Department of Transportation. So, that's the way the statute reads, and in this case there was evidence that the State Police have a duty with respect to highway defects if they observe them to report them to the Department of Transportation. Then they also have a duty to protect the scene as Trooper Luty indicated he did by putting up flares and that sort of thing."

The trial court also instructed the jury that its finding of negligence on the part of DOT employees could form the basis of a verdict in favor of the plaintiffs. Because we find the instructions quoted above not to have been erroneous, and because we are here concerned with anticipating claims of error that may arise at the new trial, we need not discuss the plaintiffs' assertion that the "general verdict rule"; see *Goodman* v. *Metallic Ladder Mfg. Corporation,* 181 Conn. 62, 64–65, 434 A.2d 324 (1980); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 410–11, 363 A.2d 86 (1975); precludes our review of the defendant's claim.

The defendant argues that because a cause of action under § 13a-144 is not really one to recover damages for an injury arising from negligence but for breach of a statutory duty; *McManus* v. *Jarvis,* 128 Conn. 707, 710, 22 A.2d 857 (1939); *Shirlock* v. *MacDonald,* 121 Conn. 611, 613, 186 A. 562 (1936); and because the statutory duty of maintaining and repairing the state's highways is upon the defendant and his agents alone; see generally General Statutes §§ 13b-24 through 13b-26; *Cairns* v. *Shugrue,* 186 Conn. 300, 441 A.2d 185 (1982); *Horton* v. *Macdonald,* 105 Conn. 356, 135 A. 442 (1926); the negligence of the state police cannot properly underlie a cause of action against the defendant under § 13a-144. We recognize that "[i]t is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases." *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 45 (1983). The words the legislature employed in § 13a-144 unambiguously support the conclusion that the statute waives sovereign immunity for defective highway claims based upon the "neglect or default" not merely of the commissioner of transportation, but "of the state or any of its employees," at least when performing duties related to highway maintenance. As the plaintiffs assert, the phrase "which it is the duty of the highway commissioner to keep in repair" identifies those highways to which the state's liability may attach.

We consequently reject the defendant's contention that in the phrase in § 13a-144, "through the neglect or default of the state or any of its employees," the word "any" ought to be interpreted in a restrictive sense to refer only to DOT employees. It is true that "[t]he word 'any,' as used in statutes, has a diversity of meanings. It may be all inclusive when used to indicate 'all' or 'every,' or it may be restrictive when

employed to indicate 'some' or 'one.' Its meaning in a given statute depends upon the context and subject matter of the law." *Duguay* v. *Hopkins, supra*, 229; see also *West Hartford Taxpayers Assn., Inc.* v. *Streeter*, 190 Conn. 736, 745, 462 A.2d 379 (1983). There are no words in § 13a-144 limiting or restricting the scope of the phrase "the state or any of its employees" to DOT employees only. If the legislature intended to impose such a restriction, it has failed to express that intention. *Duguay* v. *Hopkins, supra.*

Although we reiterate that where we perceive no ambiguity in the language used in a statute an examination of its legislative history is superfluous; see *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 231, 477 A.2d 988 (1984); we note that there is no legislative history of significance in explaining the relevant language of § 13a-144. This language appeared in the original enactment of 1915, when the state first authorized a civil action against a state official for a defective highway.[4] *Cairns* v. *Shugrue, supra*, 305. There are no records of legislative hearings or debates to shed light on the original purpose of the phrase "through the neglect or default of the state or any of its employees." Express authorization, however, for the commissioner to delegate his duties for the repair of highways appeared in Public Acts 1925, c. 263, § 53, which provided: "In the repair, maintenance, construction or reconstruction of any state aid or trunk line highway or bridge, the highway commissioner may employ such assistance as he may require." Moreover, a provision of § 13a-144 that affords the state subrogation rights against "any contractor or other person" whose neglect or default has

[4] Public Acts 1915, c. 307, § 1, provides: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair . . . may bring a civil action to recover damages sustained thereby . . . ."

caused an injury actionable under the statute,[5] does not constrict the range of such indemnitors to the commissioner of transportation or DOT employees. A reasonable interpretation of § 13a-144; see *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984); *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); implies that the commissioner is not relieved of potential liability when he calls upon the assistance of a contractor or other person from outside his department to perform highway maintenance operations.

The defendant's statutory duty to keep highways in repair encompasses a subduty of investigation and detection of highway problems. Although the state police are not statutorily charged with duties that concern the repair or maintenance of state highways; cf. General Statutes § 29-7; the evidence in the present case indicates that by custom the commissioner of transportation has availed himself of the assistance of the state police and that the state police have assumed such duties. There was testimony that it is a state trooper's "duty" and "usual procedure" to report defects found in the highway. There was further testimony that the DOT "relies on" the state police to call about highway problems. An established procedure exists by which the DOT makes available to the state police a list of the home phone numbers of its maintenance supervisors for use after hours and on weekends. That procedure was indeed of moment in the present case, the plaintiffs' accident having occurred on a Saturday. The jury was entitled to find that neglect or default of the state police in safeguarding the hazardous ice condition on Route 2A near the Brookside Inn provided a basis for the defendant's liability under § 13a-144. The trial court's jury instructions to that effect, therefore, were not erroneous.

---

[5] See footnote 3, supra.

B

The defendant also claims that because the issues framed by the pleadings did not involve the state police, the trial court erroneously invited the jury to venture beyond the parameters of the complaint.[6] " 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. *Nash Engineering Co.* v. *Norwalk*, 137 Conn. 235, 239, 75 A.2d 496 [1950].' " *Matthews* v. *F.M.C. Corporation*, 190 Conn. 700, 705, 462 A.2d 376 (1983). " 'The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way.' *DuBose* v. *Carabetta*, [161 Conn. 254, 261, 287 A.2d 357 (1971)]." *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973). Facts that are necessarily implied in a complaint, however, need not be expressly alleged. *Trichilo* v. *Trichilo*, 190 Conn. 774, 779, 462 A.2d 1048 (1983).

The plaintiffs' amended complaint disjunctively alleged six ways in which "the breach of statutory duty

---

[6] Paragraph eight of the first count of the plaintiffs' amended complaint reads:

"The injuries and losses of the plaintiff was caused by the breach of statutory duty of the defendant in one or more of the following ways:

"(a) In that the highway had an ice patch in the eastbound lane and hence was hazardous for vehicular traffic;

"(b) In that no attempt was made to remove or repair the same so as to render the highway safe for vehicular traffic;

"(c) In that there were no warning signs, flashers, barricades or other warning in the area to warn approaching motorists of the hazardous and dangerous conditions then and there existing;

"(d) In that the highway was not reasonably safe for purposes and uses intended;

"(e) In that the defendant knew or in the exercise of reasonable care and inspection should have known of the conditions and remedied and corrected them;

"(f) In that the conditions had existed for a sufficient period of time so that the defendant knew or should have known of them and should have taken measures to remedy and correct them, but this he failed to do."

of the defendant" had caused the plaintiffs' injuries. Paragraph 8 (c) of the complaint alleged the lack of "warning signs, flashers, barricades or other warning in the area to warn approaching motorists of the hazardous and dangerous conditions then and there existing." As we have stated above, the defendant had customarily used the assistance of the state police in performing certain of his statutory duties. Because the state police had assumed the duty of providing adequate initial warning to motorists of hazardous highway conditions, as evidenced in the present case by Trooper Luty's placement of flares near the ice patch, it is clear that paragraph 8 (c) necessarily implied a breach of the commissioner's duty to warn of a dangerous highway condition, regardless of which state employees had been engaged to perform that duty. Thus the defendant was adequately apprised of the nature of the proof that might be introduced during the trial. We conclude, therefore, that such evidence did not change the theory of the plaintiffs' cause of action, and that the trial court's charge with respect to the actions of the state police did not prejudice the defendant.

C

A further claim of error by the defendant relates to the trial court's instructions that, upon finding that the duties of the state police included reporting highway defects, the jury "may consider that notice to them is notice to the defendant . . . ." The defendant argues that only the defendant's receipt of actual or constructive notice of a defect can provide the temporal reference point for determining whether a reasonable opportunity to remedy the defect existed. We find the trial court's instructions to be a correct statement of the law. In analogous cases involving defective town roads, this court recognized that "[n]otice to a policeman ordinarily is not notice to the municipality except where it is shown that he is charged with

the duty of remedying or reporting defects. *Cummings v. Hartford,* 70 Conn. 115, [121–22], 38 Atl. 916 [1897]." *Wade* v. *Bridgeport,* 109 Conn. 100, 109, 145 A. 644 (1929). The trial court's instructions thus echoed this principle.

We find unconvincing the defendant's assertions that the jury charge on notice was incorrect because there was no evidence of a master-servant relationship between the defendant and the state police. Having concluded that under § 13a-144 the defendant may be held liable for the neglect or default of the state police, it is only sensible to conclude further that notice to the latter is effective against the former. The determination of whether the state police were negligent certainly requires consideration of any notice they may have received that afforded them a reasonable opportunity to act. A finding of such notice as a basis for a further finding of breach of duty on the part of the state police would satisfy the statute's "neglect or default" requirement without an additional showing that the defendant also had notice.[7]

## D

Finally, the defendant claims that the trial court's jury instructions regarding proximate cause were erroneous. Although the defendant took no exception on this point, we consider the issue because it may arise on retrial. We first dispose of the defendant's contention that the jury was never instructed on the need to find a causal connection between the misconduct of the state police and the plaintiffs' injuries. The trial court in fact instructed that the plaintiffs "must prove . . .

[7] Because we reject the defendant's contention regarding notice, we need not consider his argument that the entry of a judgment in his favor notwithstanding the verdict is mandated because "the plaintiffs introduced no evidence at all as to how much time it should reasonably have taken the defendant to remedy the defect from the time of notification to him."

that the sole proximate cause of the injuries was the neglect or default of the State or any of its employees."

The defendant's additional contention is that, because a finding that the highway defect was the sole proximate cause of the injury is a requisite for recovery under § 13a-144, the trial court erred in charging that a third party's conduct, that of the state police, could provide a basis for liability. It is well established that parties suing the state for injuries sustained because of a defective highway must prove that the defect was the sole proximate cause of their injuries. See *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986); *Foster* v. *Waterford,* 186 Conn. 692, 695, 443 A.2d 490 (1982); *Lukas* v. *New Haven,* 184 Conn. 205, 207, 439 A.2d 949 (1981); *Donnelly* v. *Ives,* 159 Conn. 163, 167, 268 A.2d 406 (1970). "It is the statute only, which entitles the plaintiff to compensation for his injury when that injury is caused through or by means of a defect in the highway. If the negligence of himself or of a third person is also a proximate cause, he cannot say with truth that he was injured by the defect; he can only say with truth that he was injured by his own or another's carelessness and the defect, and the two combined give no cause of action under the statute." *Bartram* v. *Sharon,* 71 Conn. 686, 690, 43 A. 143 (1899); *Roth* v. *MacDonald,* 124 Conn. 461, 463, 200 A. 725 (1938).

The trial court instructed the jury that the plaintiffs had the burden of proving freedom from contributory negligence. The defendant, of course, does not claim that his negligence or that of a DOT employee in performing the statutory duty to repair and maintain the highway could have been a concurrent cause of the plaintiffs' injuries so as to preclude the highway defect from being considered the sole legal cause. See, e.g., *Cairns* v. *Shugrue,* supra, 310. Because § 13a-144 entitles the plaintiffs to compensation for injuries resulting from the neglect or default of the state or any

of its employees, the state police are similarly not third parties in relation to the statute. Thus, the fault of the state police in performing a duty they have assumed with respect to defective highways is not a concurrent cause that deprives the plaintiffs of their cause of action.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PETERS, C. J., and HEALEY, J., concurred.

DANNEHY, J., dissenting in part. I respectfully dissent. I disagree with the majority only as to part II: whether the trial court erred in instructing the jury that negligence on the part of the state police could provide a basis for finding the defendant liable under General Statutes § 13a-144.

The state of Connecticut is not liable for simple negligence in the repair and construction of its roads. The state is immune to suit on such a ground. The plaintiffs' sole right to recover damages for any injuries which they may prove exists by virtue of § 13a-144, the "defective highway statute." Apart from the statute the plaintiffs had no right to recover damages from the defendant. The plaintiffs, of course, made no claim to the contrary but based their case on the defective highway statute.

It was apparently undisputed that the plaintiffs had complied with the requirements of the statute as to notice. And the defendant does not argue that the evidence would not warrant a finding that the plaintiffs were injured when the automobile in which they were riding passed over an ice patch, swerved out of control, and collided with a bridge abutment. Nor does he contend that the defect, the ice patch, could not have been found to be a remediable defect of which the defendant by the exercise of proper care and diligence might

have had reasonable notice. The ground argued by the defendant is that the trial court erred in instructing the jury that negligence on the part of the state police could provide a basis for recovery under § 13a-144.

In actions against the state for defective highways there can be no recovery unless *the defect was the sole cause* of the injury. In other words, where the wrong-doing of a third person combines with the defect in the highway to cause the injury, the state is not liable. Consequently, if any negligence of the state police contributed to the accident, the plaintiffs could not recover because by reason of that negligence it could not be found that the defect in the highway was the sole cause of the injury.

The plaintiffs, to be entitled to a verdict, had to prove first, that the highway at the place and time in question was defective from the icy condition as alleged in the complaint; second, that the defendant's actual or constructive notice of this condition came a sufficient length of time before the claimed injuries occurred so that the defendant, if in the exercise of reasonable care, could have remedied the particular defective condition prior to the collision; third, that the plaintiffs sustained injuries and that the particular defective condition as alleged was the *sole proximate cause* of the plaintiffs' collision and injuries. Since there is neither law nor fact to support the majority opinion, I would find that the trial court erred in instructing the jury that the negligence on the part of the police could provide a basis for recovery under § 13a-144.

CALLAHAN, J., dissenting in part. I respectfully dissent from part I of the majority opinion. "The trial court has wide discretion in conducting the examination of jurors. [Citations omitted.] Unless this discretion has been clearly abused or harmful prejudice appears to have been caused thereby, the court's supervision of the voir dire will be upheld." *Robinson* v.

*Faulkner,* 163 Conn. 365, 374, 306 A.2d 857 (1972); *State* v. *Bowen,* 167 Conn. 526, 530, 356 A.2d 162 (1975); *State* v. *Van Valkenburg,* 160 Conn. 171, 173, 276 A.2d 888 (1970). I do not believe the trial court clearly abused its wide discretion when it sustained the plaintiffs' objections to the questions of defendant's counsel during voir dire, the exclusion of which the majority finds to be error. I agree with part II of the majority opinion and would affirm the judgment.