BOARD OF EDUCATION OF THE TOWN OF RIDGEFIELD *v.*
FREEDOM OF INFORMATION COMMISSION ET AL.
(13966)

PETERS, C. J., SHEA, CALLAHAN, GLASS and SANTANIELLO, Js.

Argued October 30, 1990—decision released January 22, 1991

*Susan P. Liemer,* commission counsel, for the appellant (named defendant).

*Robert B. Mitchell,* with whom was *Steven J. Sibner,* for the appellee (plaintiff).

SANTANIELLO, J. This is an appeal by the defendant freedom of information commission (defendant) from a judgment of the trial court sustaining an appeal by the plaintiff, the Ridgefield board of education (board), from a decision of the defendant. We affirm the trial court's judgment.

The pertinent facts are essentially undisputed. At all times relevant to this matter, the board sponsored a high school literary magazine entitled Lodestar. The magazine published submissions from students, faculty and alumni. The June, 1987 edition of Lodestar contained a controversial alumni contribution. In reaction to the ensuing controversy, the superintendent of schools for the town of Ridgefield, Dr. David Larson,

decided to exclude alumni submissions from future editions of Lodestar.[1] Robert Cox, a faculty advisor to Lodestar, and members of the magazine's editorial board opposed the decision and retained legal counsel, Attorney William Laviano. After two discussions with Larson and a third discussion with the board's counsel, John Sabanosh, Laviano submitted a letter to Larson dated April 13, 1988, analyzing the existing confrontation and its legal implications, and demanding that the board rescind its decision by April 26, 1988, in order to avoid legal action.[2]

On April 25, 1988, the board held a regular public meeting during which it convened in a closed door, executive session together with Sabanosh and Larson. The publicly stated purpose for the executive session was, among others, to receive advice from counsel on the Lodestar matter. During the course of the executive session, the April 13 letter from Laviano was dis-

---

[1] Although Larson decided in the summer of 1987 to exclude alumni submissions to Lodestar, he did not reduce that decision to writing until April 8, 1988, in a letter to Robert Cox, a faculty advisor for Lodestar.

[2] Pertinent portions of Laviano's letter follow:

"In an attempt to avoid litigation, which is a very *real* possibility in this case, I have requested that you withdraw your order of April 8, 1988 with regard to this year's Lodestar . . . . I told John Sabanosh that I had about two weeks for this decision to be made before papers need be filed in U.S. District Court asking for an injunction.

"In examining the realistic publication deadlines, the time necessary for the preparation of legal papers and for the court to schedule a full evidentiary hearing, it appears that we must receive your decision before April 26, 1988. I am sorry but those are the practicalities of the timing situation.

"Thus I request that you schedule a meeting with my clients on April 24th or 25th to see if a compromise is possible. We also could appear before the Board on April 25, 1988 in public session.

"The second purpose of this letter is to set forth in a structured fashion, certain legal claims & facts which represent considerations of the merits of my clients' complaint.

"It is hoped that this letter will be considered by you, the Board and John in evaluating the *equities* as well as the legalities involved.

"The potential case of *Lodestar* and *Cox* v. *Ridgefield* offers many distinctions from the set of facts in *Hazelwood.*"

cussed and a proposed resolution was finalized for presentation and action in regular session. Upon reconvening the regular session, the board adopted a resolution ratifying the superintendent's decision to restrict materials appearing in Lodestar to items submitted by members of the students and faculty of Ridgefield High School.

On April 28, 1988, Laviano, on behalf of Cox, submitted a letter of complaint to the defendant alleging that the board had met in executive session for an impermissible purpose. After a full hearing, Commissioner Joan M. Fitch found "that the respondent [board] did not meet in executive session for a purpose permitted by either §§ 1-18a (e) (2) or 1-18a (e) (5), G.S.," and concluded, therefore, that, "the respondent violated §§ 1-18a (e), 1-21 (a) [sic] and 1-21g (h) [sic], G.S., by convening in executive session for an impermissible purpose."

On January 25, 1989, the defendant adopted the findings of Commissioner Fitch and made certain specific findings.[3] Subsequent thereto, on March 17, 1989, the board appealed the defendant's decision to the Supe-

---

[3] The defendant concluded that the board had convened in executive session for a purpose not permitted by the Freedom of Information Act, stating specifically:

"15. It is found that the written policy statement presented by the respondent's attorneys contains no information that constitutes a communication privileged by the attorney-client relationship.

"16. Indeed, it is found that immediately after the executive session adjourned, the respondent reconvened in public session, had the revised statement read aloud, and without discussion unanimously voted to adopt it.

"17. It is also found that the complainant's attorney's letter, explained in the executive session, contains no information privileged by the respondent's attorney-client relationship.

"18. Thus it is concluded that no record as defined in § 1-19 (b) (10), G.S., was discussed in the executive session.

"19. It is found that legal advice about a threatening letter does not constitute 'strategy and negotiations with respect to pending claims and litigation' within the meaning of § 1-18a (e) (2), G.S.

"20. It is also found that a presentation and revision of a policy statement on magazine submissions does not constitute 'strategy and negotia-

rior Court. The trial court sustained the appeal of the board, finding that the defendant's decision was in "derogation of the law, an abuse of discretion, [and] not based on [the] facts . . . ."

From that decision, the defendant appealed to the Appellate Court on March 14, 1990, and the case was subsequently transferred to this court pursuant to Practice Book § 4023.

The defendant claims that the trial court: (1) exceeded its authority by substituting its judgment for that of the defendant; (2) incorrectly ruled that the demand of the student editors and Cox, as set out in Laviano's letter, constituted a pending claim that the board could discuss in executive session; and (3) incorrectly interpreted General Statutes § 1-18a (e) (5) in finding that the discussion of a draft resolution was protected from public disclosure.

I

The defendant first claims that the trial court exceeded the permissible scope of its review in determining that Laviano's letter constituted a pending claim. The defendant argues that the trial court should be reversed for failing to defer to the defendant's determination of this issue. A brief overview of the statutory background of this claim is necessary.

General Statutes § 1-21 (a)[4] provides that public agencies may adjourn from a public hearing into executive session in only a few narrowly defined circumstances,

tions with respect to pending claims and litigation' within the meaning of § 1-18a (e) (2), G.S.

"21. Thus it is concluded that the respondent did not meet in executive session for a purpose permitted by either §§ 1-18a (e) (2) or 1-18a (e) (5), G.S.

"22. It is concluded, therefore, that the respondent violated §§ 1-18a (e) 1-21 (a), [sic] and 1-21g (h) [sic], G.S., by convening in executive session for an impermissible purpose."

[4] General Statutes § 1-21 (a) reads in pertinent part: "The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public."

one of which is to discuss "strategy and negotiations with respect to pending claims and litigation to which the public agency . . . is a party . . . ." General Statutes § 1-18a (e) (2).[5] The defendant therefore had to determine whether Laviano's letter constituted a "pending claim" and whether the board's discussion in executive session was properly devoted to "strategy and negotiations" concerning that claim.

The interpretation of statutes presents a question of law. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 139–40, 509 A.2d 1050 (1986). The disposition of the present case hinges on whether Laviano's letter constituted a "pending claim" within the meaning of the statute. This issue in turn is dependent on the interpretation of the statutory term "pending claim." The defendant's finding that the letter did not constitute a pending claim was therefore a determination of law.[6]

General Statutes § 1-21i (d) provides that appeals from the defendant are taken pursuant to the Uniform

[5] The relevant portions of General Statutes § 1-18a (e) read as follows: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes . . . (2) strategy and negotiations with respect to pending claims and litigation to which the public agency or a member thereof, because of his conduct as a member of such agency is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . and (5) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-19."

[6] The defendant claims that this issue involved a question of fact, in that Laviano's letter could not be read in a vacuum, divorced from its surrounding factual background. This factual background, as well as Laviano's letter, was the subject of testimony before the defendant. Robert Cox testified that, prior to the board's receipt of Laviano's letter, numerous conversations regarding this controversy had transpired between Larson, Cox, Laviano, Sabanosh and the student editors of the magazine. The defendant argues that, because these conversations may have colored the board's perception of the threat of litigation underlying Laviano's letter, it was for the defendant, as trier of fact, to determine whether these conversa-

Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189. Under the UAPA, a trial court may reverse the decision of an administrative agency if that decision evinces an "error of law." General Statutes § 4-183 (j) (4). The trial court need not defer to an incorrect decision of law by the agency. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* supra, 140. " 'Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law.' " Id. The defendant's claim to the contrary is without merit.

## II

We next turn to the merits of the defendant's claim that Laviano's letter did not constitute a "pending claim" within the meaning of General Statutes § 1-18a (e) (2). The defendant argues that although the letter threatened legal action, it cannot be considered a pending claim because it was not a claim formally submitted to an adjudicatory body and was therefore not "pending."

The defendant contends that the phrase "pending claims and litigation" must be construed narrowly

---

tions had such an effect, and that this determination transformed the question of the letter's meaning into one of fact.

There is nothing in the record to indicate that the letter could not reasonably have been viewed by the board as a "pending" claim. First, the defendant's final decision does not suggest that the board members, as a result of prior conversations with Cox, Laviano, or anyone else, failed to view the letter as a demand for legal relief. Second, in reviewing the administrative record we find no testimony regarding those conversations that could have led the defendant reasonably to believe that the board gave the letter anything other than a literal reading. Indeed, the testimony before the defendant reveals that Laviano's letter was merely a written memorialization of the position of Cox and the students as expressed in prior conversations with Larson.

because, as used in § 1-18a (e) (2), it establishes an exception to the basic openness requirement of the Freedom of Information Act (FOIA). This basic proposition, that exceptions to the FOIA's open hearings requirement are to be construed narrowly, is firmly established in our law. See *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 775, 535 A.2d 1297 (1988). Even when construing statutory language narrowly, however, we cannot ignore the plain meaning of the words of the statute. *Lamb* v. *Burns*, 202 Conn. 158, 168, 520 A.2d 190 (1987). The defendant's reading of the statute loses sight of this principle.

We note at the outset that "pending claims and litigation" must refer to a wider class of claims than those already filed in court. To hold otherwise would render the term "pending claims" superfluous. See, e.g., *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985) (no part of legislative enactment is to be treated as insignificant or unnecessary). We decline the defendant's invitation to construe "pending claims and litigation" to encompass only those claims presently in litigation or pending before some other adjudicatory body.

In an earlier case we wrote that the term " '[c]laim' in its primary meaning is used to indicate the assertion of an existing right." *Beach's Appeal,* 76 Conn. 118, 125, 55 A. 596 (1903). Today, "claim" is commonly defined as "[a] demand for something as one's rightful due . . . [a] basis for demanding something; title or right"; American Heritage Dictionary (2d College Ed. 1985); and "[d]emand for money or property." Black's Law Dictionary (5th Ed. 1979). These definitions, read in the context of § 1-18a (e) (2), suggest that "claim," as used in the statute, should be understood to mean the assertion of a positive legal right, which a court, administrative agency or other public agency

could implement. "Pending" has been defined as "[b]egun, but not yet completed; before the conclusion of"; Black's Law Dictionary (5th Ed. 1979); and "[not] yet decided or settled; awaiting conclusion or confirmation." American Heritage Dictionary (2d College Ed. 1985). From these definitions it may reasonably be inferred that a pending claim is one already in existence and in progress. The defendant further contends, however, that only claims formally submitted to some adjudicatory forum may be deemed to be in progress. We do not discern in the applicable definitions a requirement that a claim, to be "pending," must be formally under adjudication. Such a requirement, moreover, has no basis in reality, for it would deprive public agencies of the ability to formulate in private a response to the threat of imminent legal action until that action has commenced in court, thereby placing public agencies at a serious disadvantage. Such a rule would make it extremely difficult, for instance, for a public agency ever to settle a legal demand against it prior to the institution of suit. The defendant's interpretation of "pending" thus renders litigation a tool of first, rather than last, resort for public agencies and those seeking to deal with them, a result wasteful of scarce governmental resources and thus contrary to public policy. We, therefore, reject it.[7]

It is neither necessary nor desirable, however, for this court to define further the parameters of the term "pending." That task is properly left with the admin-

---

[7] We further note that during the legislative deliberations prior to the enactment of Public Acts 1977, No. 77-609 (now codified at General Statutes § 1-18a [e] [2]), an amendment was offered that would have restricted the meaning of pending claims to include only pending "claims" for which "legal notice has been filed." Conn. Joint Standing Committee Hearings, Government Administration & Policy, Pt. 2, 1977 Sess., p. 423. The amendment would have narrowed the scope of "pending claims" in a manner similar to that proposed by the defendant in the present case. The amendment, however, was defeated.

istrative agency, on a case-by-case basis. *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* 212 Conn. 100, 105–106, 561 A.2d 429 (1989). The next question we face is whether the trial court correctly determined that Laviano's letter constituted a "pending claim."

Upon reviewing the evidence in the administrative record, we agree with the trial court that Laviano's letter constituted a claim within the proper meaning of the statute. In that letter, the board had before it a carefully articulated demand for certain legal relief, a demand asserted to vindicate an alleged legal right personal to Laviano's clients. *Beach's Appeal,* supra, 125. The letter requested that by April 26, 1988, the board rescind Larson's order prohibiting the magazine from publishing alumni submissions, and stated that Cox and the students would file suit if this was not done. Laviano's letter purported to address the legal merits of the students' claim. Although he stated at several points in the letter that Cox and the students wished to avoid litigation, the only way to avert that outcome, under the terms of the letter, was for the board essentially to capitulate.

The facts of this case lead inescapably to the conclusion that the claim was "pending" within the meaning of the statute. It defies common sense to assert that the claim of Laviano's clients had not yet "begun" by the time of the challenged executive session, when, in fact, that claim, reduced to writing, was in the board's hands and awaiting its decision. The claim was both in existence and in progress. The trial court, therefore, correctly determined that Laviano's letter constituted a "pending claim."[8]

---

[8] The defendant further claimed that, because no claim was "pending," there was nothing to which the board could be a party. General Statutes § 1-18a (e) (2). This claim is disposed of by our determination that there was a pending claim, directed at the board. The board, therefore, was a party to the claim.

Finally, we consider whether the board's discussion concerned *"strategy and negotiations* with respect to pending claims and litigation . . . ." (Emphasis added.) General Statutes § 1-18a (e) (2). At oral argument the defendant questioned whether the topic of the board's discussion in executive session was a permissible one under § 1-18a (e) (2). The defendant argued that the board's discussion of the draft proposal affirming Larson's order concerned a matter of school board policy, and as such should have been held publicly. General Statutes § 1-18a (e) (2). We disagree.

It is permissible for public agencies to adjourn into executive session to discuss "strategy and negotiations with respect to pending claims and litigation to which the public agency . . . is a party . . . ." General Statutes § 1-18a (e) (2). The "pending claim" concerning the board was the demand that Larson's order be rescinded. The discussion in executive session concerned whether to do so, and if not, the manner in which to affirm his order. The board could reasonably have believed that the threat of litigation contained in Laviano's letter was real, and that its decision on this matter would determine whether litigation would be avoided or would go forward. The board's discussion in executive session thus came well within any reasonable interpretation of the term "strategy and negotiations."[9]

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.

---

[9] The defendant's last claim is that the trial court incorrectly ruled that the board could avail itself of General Statutes § 1-18a (e) (5), which permits the discussion, in executive session, of "any matter which would result in the disclosure of public records or the information contained therein" including "communications privileged by the attorney-client relationship." General Statutes § 1-19 (b) (10).

Having already determined that there was an adequate legal basis for the executive session, namely, the discussion of strategy or negotiation with respect to a pending claim to which the board was a party, we need not consider the merits of this alternative legal basis for the executive session.