[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED NOVEMBER 21, 1996
The plaintiffs, Liba H. Furhman, who during the pertinent time was Mayor of the Town of New Milford, and six members of the New Milford Town Council, appeal a decision of the Freedom of Information Commission (FOIC) finding that the plaintiffs violated General Statutes § 1-21 (a) by excluding the public from certain discussions held in executive session by the Town Council. The plaintiffs claim that the discussions held during the executive session were reasonably related to or an essential part of the Town Council's strategies regarding "pending litigation" within the meaning of the exception in § 1-18a. The plaintiffs alternative argument is that the entire discussion in the executive session was exempt from public disclosure under the "attorney-client" privilege pursuant to General Statutes § 1-19(b)(10).
The following facts are pertinent. At the regular meeting of the Town Council on April 1, 1995, Furhman announced that The Hartford Courant reported that Waste Management of Connecticut, Inc. (Waste Management), "had entered a bid for the disposal of 150,000 tons of sediment from the Howland Hook Terminal [in Staten Island]." Waste Management wished to dispose of the sediment at the New Milford landfill. The minutes from that meeting demonstrate that Furhman stated she had consulted with various people, including Waste Management. Furhman also described the efforts made to gather further information on this subject.
During that meeting, the council publicly passed a motion to oppose Waste Management's proposal. It also publicly approved two supplemental appropriations of $15,000 to retain an environmental consultant and $10,000 to retain and appoint special legal counsel on the waste disposal issue. CT Page 10189
At a subsequent regular meeting on April 24, 1995, the Town Council announced it had chosen Apex Environmental, an environmental consulting firm, to work with the town to address Waste Management's request to dispose of the sediment at the New Milford landfill. After discussion of the need to obtain a preliminary assessment of the situation from Apex, the Town Council voted to give Furhman permission to retain Apex.
This issue was raised again at a special meeting of the Town Council on June 1, 1995. Item 8a of the agenda for that meeting stated that the Town Council might go into executive session to discuss the sediment disposal issue. Before the Council convened the executive session, Furhman publicly stated that Apex had done some review work but had not yet submitted a full report on the situation. Attorney Marianne Dubuque of Carmody and Torrence, who was retained for purposes of taking any action necessary on behalf of the town, was present during this June 1, 1995 public meeting and at the Town Council's executive session.
Following the executive session, the Town Council approved in open session a supplemental appropriation of $20,000 to the "Special Legal Sludge" account for attorneys fees on the sediment disposal controversy, and voted for another appropriation of $10,000 to the "Environmental Sludge Consultant" account.
Jay Lewin, the complainant, filed his complaint with the FOIC on June 7, 1995, claiming that the executive session covered topics that were not included in the pending litigation exclusion of § 1-18a(e)(2) and (h)(3). The hearing officer found, and the record supports, that during the executive session, the council members "considered the practicality of engaging a consultant, whether or not to proceed on the issue, and whether potential litigation against the Department of Environmental Protection [(DEP)] would be desirable depending on the findings a consultant may make."
The council's executive session also included the following topics: a) the amount of money to be spent CT Page 10190 on consultants and attorneys and the hiring of a lobbyist; b) the contents of some prior consultants' reports; c) the frequency of updates from lawyers and consultants; and d) legal options of the town including the feasibility of a declaratory judgment before [the] superior court, whether an immediate claim could be filed against the DEP, and appropriate timing of any such filings."
The FOIC concluded that while discussion in executive session of legal options described under item d) was permitted pursuant to General Statutes § 1-18a(e)(2) and (h)(3), "the respondent's discussions concerning budgeting, hiring and the frequency of reports from consultants and attorneys falls outside the above-referenced exemptions" and that they should have been held in open session. The FOIC ordered: "Henceforth the [Town Council] shall strictly comply with the provisions of § 1-21 (a)." On July 28, 1995, the FOIC sent notice of its decision. Notice of this decision was mailed on July 28, 1995. The plaintiffs timely filed this appeal on September 7, 1995.
The issue of mootness must be addressed before the merits of this appeal are considered, because it implicates the subject matter jurisdiction of the court over this appeal. Ayala v. Smith, 236 Conn. 89, 93
(1996). The FOIC claims that this appeal is moot because the underlying controversy in this case, i.e., the Port Authority and Waste Management's application to dispose of sludge in the New Milford landfill, no longer exists. The Plaintiffs do not dispute that the Port Authority has withdrawn its application.
"Mootness applies to situations where events have occurred during the pendency of an appeal that make [a] . . . court incapable of granting practical relief through a disposition on the merits." (Citation omitted.)Sobocinski v. FOIC, 213 Conn. 126, 134 (1989). If "during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." Loisel v. Rowe,233 Conn. 370, 378 . . . (1995), quoting In re Romance M.,229 Conn. 345, 357 . . . (1994). (Internal quotation CT Page 10191 marks omitted.) Peart v. Psychiatric Security ReviewBd., 41 Conn. App. 688, 691 (1996). "This court will not decide moot questions where there is no actual controversy or where no actual or practical relief can follow from their determination." (Citations omitted.)Sobocinski v. FOIC, supra, 213 Conn. 135.
The FOIC argues that its order requires the Town Council to strictly comply with the requirements of the FOIA as they apply to the facts of this case. Accordingly, the FOIC argues there is no case or controversy before the court and no possible relief can be granted.
In fact, the FOIC's order states: "Henceforth the respondent shall strictly comply with the provisions of § 1-21 (a), G.S." The language of this order does not limit its application to the facts of this case. On its face, it applies to the Town Council prospectively. The existence of this order will undoubtedly have a chilling effect on the Town Council when it next calls an executive session in order to discuss what it now argues is litigation strategy. Board of Pardons v. FOIC,210 Conn. 646, 651 (1989); Zoning Board of Appealsv. FOIC, 198 Conn. 498, 502 (1986); City of Hartfordv. FOIC, Judicial District of Hartford, Docket No. 0533024 (September 16, 1994); Kelly v. FOIC,221 Conn. 300, 314 (1992).
Pursuant to General Statutes § 1-21k(b), the plaintiffs may face criminal sanctions if they fail to comply with the order of the FOIC. "Any member of any public agency who fails to comply with an order of the Freedom of Information Commission shall be guilty of a class B misdemeanor and each occurrence of failure to comply with such order shall constitute a separate offense." General Statutes § 1-21k(b). "The impact of the order is especially troubling where, as here, [the plaintiffs] may face criminal sanctions for not adhering to the FOIC's order." City of Hartford v. FOIC, supra.
This is not a case where the relief has already been granted; Lucarelli v. FOIC, 29 Conn. App. 547, 551,616 A.2d 816 (1992), cert. denied, 225 Conn. 901,621 A.2d 284 (1993); or where the parties have settled the case themselves; Sobocinski v. FOIC, supra,
CT Page 10192213 Conn. 134. A genuine dispute remains as to whether the Town Council properly discussed and may in the future discuss the amount of money to be spent on consultants and attorneys, the hiring of a lobbyist, the contents of prior consultants' reports and the frequency of updates from lawyers and consultants to the Town Council. If appropriate, this court may grant practical relief to the plaintiffs here.
The plaintiffs seek to have the prospective and broad order of the FOIC vacated. It has not yet retained that relief. Thus, this appeal is not moot.
Turning to the merits of this appeal, the plaintiffs argue that the FOIC improperly interpreted and applied the "strategy . . . with respect to pending . . . litigation" exception, as provided in § 1-18a(e), in holding that any of the matters discussed in the June 1, 1995 executive session should have been discussed only in a public meeting. It must be determined, therefore: (1) whether the matters discussed involved "pending litigation," and (2) whether the topics discussed in the Town Council's executive session were part of its "strategy" in addressing the pending litigation.
Under General Statutes § 1-21 (a) of the FOIA, meetings of public agencies shall be open to the public, except for executive sessions. "Executive session" is defined, in pertinent part, as "a meeting of a public agency at which the public is excluded for one or more of the following purposes . . . (2) strategy and negotiations with respect to pending claims or pending litigation to which the public agency or a member thereof, because of his conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; . . ." General Statutes § 1-18a(e)(2).
"Pending litigation" is also a defined term. "`Pending litigation' means (1) a written notice to an agency which sets forth a demand for legal relief or which asserts a legal right stating the intention to institute an action before a court if such relief or right is not granted by the agency; (2) the service of a complaint against an agency returnable to a court which seeks CT Page 10193 to enforce or implement legal relief or a legal right; or (3) the agency's consideration of action to enforce or implement legal relief or a legal right." § 1-18a(h). Subsection (3) applies in this case.
 The overarching legislative policy of the FOIA is one that favors the open conduct of government and free public access to government records. Perkins v. Freedom of Information Commission, 228 Conn. 158, 166 (1993) . . . The sponsors of the FOIA understood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. [The] construction of the [FOIA] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed.
(Citations and internal quotation marks omitted.)Glastonbury Education Assn. v. Freedom of InformationCommission, 234 Conn. 704, 710 (1995).
A trial court may reverse the decision of the FOIC if the decision evinces an error of law pursuant to General Statutes § 4-183 (j)(4). "The interpretation of statutes presents a question of law. Connecticut HospitalAssn. v. Commission on Hospitals Health Care,200 Conn. 133, 139-40, 509 A.2d 1050 (1986)." Boardof Education of Ridgefield v. FOIC, 217 Conn. 153, 158
(1991). "The trial court need not defer to an incorrect decision of law by the agency. Connecticut HospitalAssn. v. Commission on Hospitals Health Care,supra, 140. `Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts it is for the courts, and not for administrative agencies, to expound and apply governing principles of law.' Id."Board of Education of Ridgefield v. FOIC, supra,217 Conn. 159.
As to the first inquiry, the matters discussed by the Town Council in executive session involved "pending litigation." The defendants correctly point out "that exceptions to the FOIA's open hearings requirement CT Page 10194 are to be construed narrowly." Board of Education ofRidgefield v. FOIC, 217 Conn. 153, 160 (1991). "Even when construing statutory language narrowly, however, we cannot ignore the plain meaning of the words of the statute. Lamb v. Burns, 202 Conn. 158, 168,520 A.2d 190 (1987)." Board of Education of Ridgefieldv. FOIC, 217 Conn. 160.
The definition of "pending litigation" was added to the statute in Public Act 91-140. Prior to such amendment, our Supreme Court declined to construe "`pending claims and litigation' to encompass only those claims presently in litigation or pending before some other adjudicatory body." Id., 160. Nothing in the definition in § 1-18a(h)(3) indicates a different conclusion is merited here. Subsection (3) provides: "the agency's consideration of action to enforce or implement legal relief or a legal right." Subsections § 1-18a(h)(1) and (2) alternatively define "pending litigation" with reference to demanding legal relief from an agency or serving a complaint on an agency to initiate a court action against it. If, despite the plain language of the subsection, § 1-18a(h)(3) is read as requiring an action be before an adjudicatory body, the definitions in subsections (1) and (2) would be superfluous and our courts do not read statutory language as if it were superfluous. Town of Stratfordv. State Board of Mediation and Arbitration,239 Conn. 32, 55 (1996).
The Town Council was concerned about the possible effects the disposal of sediment would have on the landfill and New Milford. During the June 1, 1995 executive session, the Town Council considered its possible legal options and responses to the disposal application. The council was considering action to implement legal relief and enforce the town's legal rights. Therefore, the executive session was held for purposes of discussing "pending litigation."
Furthermore, the purpose of the executive session was to discuss "strategy" with respect to the sediment disposal issue. All the topics included in the Town Council's discussion were related to the town's strategy in addressing the sediment disposal issue. CT Page 10195
The plaintiffs ask this court to adopt the reasoning of other jurisdictions that hold to the extent it is burdensome and impractical segregating topics "into open and closed sessions" are unnecessary. Kansas v.Board of Education of Unified School District No. 305,764 P.2d 459, 461 (Kan.App. 1988); see also Clark-CowlitzJoint Operating Agency v. F.E.R.C, 798 F.2d 499
(D.C. Cir. 1986). Adopting that caselaw is not advisable here where the statutes involved in those cases are not identical to Connecticut's FOIA, and where our Supreme Court has stated that "[a]lthough the legislature's narrowly tailored approach to the FOIA exclusions and exemptions may add a layer of complexity to agency administration, the legislature implicitly has decided that the associated costs are outweighed by the benefits derived from open government."Glastonbury Education Assn. v. Freedom ofInformation Commission, supra, 234 Conn. 714. Thus, the ease with which the matters are properly segregated are not relevant to this inquiry. The question is whether the disputed topics are "strategy" under the statute.
Section 1-18a(e)(3) states that an executive session is a meeting that must be held for "purposes of strategy and negotiations with respect to pending . . . litigation." "Strategy is defined as a careful plan or method and the art of devising or employing plans or stratagems toward a goal." State Board of Labor Relations v.FOIC, 43 Conn. App. 133, 140 (1996) (defining "strategy" for purposes of § 1-18a(b)).
At this point it is important to note that the term "legal" was not inserted before "strategy" in Section 1-18a(e)(2). For example, § 1-18a(e)(3) allows an executive session for discussions on "security strategy or the deployment of security personnel, or devices affecting public security." (Emphasis added.) If the legislature had wanted to limit the term "strategy" to merely legal inquiries, it could have done so. It did not.
The FOIC determined and the record in this case supports that the Town Council considered various plans of action. For purposes of choosing a plan of CT Page 10196 action and balancing the advantages and disadvantages of each plan considered; the Town Council properly discussed in executive session attorneys fees, including those for hiring an attorney lobbyist from Attorney Dubuque's firm to approach the DEP on the sediment disposal issue. The cost of environmental consultants was also contemplated, as was the cost of each strategy the town considered pursuing. The complainant argues in his brief that the Town Council could have labelled each option "A" and "B" and that "[a]fter discussing their merits in executive session, the cost of each could then be discussed in public session and yet maintain the necessary degree of confidentiality." This suggestion, while creative does not change the fact that this topic involves strategy under the statute and may properly be taken up in executive session. Significantly, however, the Town Council publicly appropriated funds for attorneys and consultants directly following the executive session on June 1, 1995. These topics were not improperly included in the executive session discussions.
As to the preliminary consultant's report, it was produced by the consultant to analyze the sediment to determine its toxicity. The outcome of the environmental analysis on the size of the threat the sediment posed would affect the town's choice of strategy. The FOIC misinterpreted and misapplied the law in determining that this topic was not an integral part of the Town Council's strategy discussions.
There is one topic with respect to which the FOIC was correct. The brief discussion of the frequency of progress reports from attorneys and consultants was not properly held in executive session. While administrative in nature, it is not related to the Town's plan of action or the process it followed in choosing such a plan. Furthermore, it is not protected by the attorney-client privilege under General Statutes § 1-21g(b), which provides; "An executive session may not be convened to receive or discuss oral communications that would otherwise be privileged by the attorney-client relationship if the agency were a nongovernmental entity, unless the executive session is for a purpose explicitly permitted pursuant to subsection (e) of section CT Page 101971-18a."
For the reasons stated above, the plaintiffs' appeal is sustained and the case is remanded to the FOIC for further proceedings. General Statutes § 4-183(j).
McWEENY, J.