******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PLANNING AND ZONING COMMISSION OF
THE TOWN OF MONROE ET AL. *v.*
FREEDOM OF INFORMATION
COMMISSION ET AL.
(SC 19263)
(SC 19264)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa,
Robinson and Vertefeuille, Js.

*Argued October 23, 2014—officially released March 24, 2015*

*Victor R. Perpetua*, principal attorney, with whom
were *Clifton A. Leonhardt*, chief counsel, and, on the
brief, *Colleen M. Murphy*, general counsel, for the appel-
lant-appellee in SC 19263 and the appellee in SC 19264
(named defendant).

*Ian Angus Cole*, for the appellants in SC 19264 and
the appellees in SC 19263 (defendant Handsome, Inc.,
et al.).

*Assaf Z. Ben-Atar*, with whom were *Edward P.
McCreery III*, and, on the brief, *John H. Van Lenten*,
for the appellees-appellants in SC 19263 and the appel-
lees in SC 19264 (plaintiffs).

*Opinion*

ZARELLA, J. Connecticut's Freedom of Information Act[1] (act) allows public agencies to convene executive sessions, as an exception to the general rule that meetings must be open to the public, to discuss "strategy and negotiations with respect to pending claims or pending litigation to which the public agency . . . is a party . . . ." General Statutes § 1-200 (6) (B). The dispositive issue in these appeals is whether an executive session held by the named plaintiff, the Planning and Zoning Commission of the Town of Monroe (zoning commission),[2] fell within the purview of the act's "pending claims or pending litigation" exception. The named defendant, the Freedom of Information Commission (FOIC), initially determined that the zoning commission's executive session was unlawful under the act. The zoning commission appealed from the FOIC's decision to the trial court, which reversed the FOIC's decision, concluding that the zoning commission's executive session was permissible under the act's pending claims or pending litigation exception. The FOIC now appeals from the judgment of the trial court, claiming that the executive session violated the act.[3] The defendant Handsome, Inc. (Handsome), and its principal officers, the defendants Todd Cascella and Mona Cascella, who were seeking approval of a zoning permit extension by the zoning commission when it convened the executive session in question, also appeal from the judgment of the trial court, claiming that the executive session was unlawful.[4] We conclude that the zoning commission's executive session was not justified under the pending claims or pending litigation exception of the act and, accordingly, reverse the judgment of the trial court.[5]

The record reveals the following facts. In 2003, the zoning commission issued Handsome a special exception permit, authorizing it to excavate land at 125 Garder Road in the town of Monroe to construct a new industrial building, subject to certain conditions enumerated in the permit. In 2008, one month before the permit was set to expire, Handsome filed an application with the zoning commission for a five year extension. The zoning commission denied the application on the ground that Handsome had failed to comply with the conditions of the original permit. Handsome and the Cascellas appealed to the Superior Court, which determined that the zoning commission improperly had denied the application to extend the permit and that "the [zoning] commission had no option but to approve the . . . request for an extension." Handsome subsequently requested by letter that the zoning commission extend the permit. In response, the zoning commission put the request on the agenda for its May 5, 2011 regular meeting.

Specifically, the agenda for that meeting provided in

relevant part: "3. RECESS REGULAR MEETING and CONVENE to EXECUTIVE SESSION. Review of enforcement procedures with Town Engineer/Acting Clerk of the [Zoning] Commission, First Selectman, Land Use Attorney and Zoning Enforcement Officer.

"4. RECONVENE REGULAR MEETING

\* \* \*

"15. OTHER BUSINESS

"16. ENFORCEMENT. 125 Garder Road—activity without permits.

\* \* \*

"22. LEGAL ISSUES. 125 Garder Road—compliance with extension of approval."

At the start of the May 5, 2011 meeting, the zoning commission immediately convened an executive session to discuss what it described as legal matters regarding general zoning enforcement. Following the executive session, which lasted approximately fifty minutes, the zoning commission reconvened and extended Handsome's permit to 2013.[6] After the zoning commission's meeting, Handsome and the Cascellas filed a complaint with the FOIC, claiming that the zoning commission's executive session violated the act.[7]

The FOIC held a hearing at which it received evidence and heard testimony from witnesses and arguments from counsel. The FOIC found that, during the executive session, the members of the zoning commission had discussed two topics that potentially warranted convening an executive session: (1) how to respond to the prior decision of the Superior Court overruling the zoning commission's denial of Handsome's application to extend its permit; and (2) how to address Handsome's noncompliance with the conditions of the original permit. With respect to the second topic, the FOIC further found that, although the zoning commission members had discussed potential options for addressing Handsome's alleged permit violations, they had *not* discussed initiating a zoning enforcement action against Handsome or filing an action against it in court or another forum for those alleged permit violations.

On the basis of these findings, the FOIC concluded that neither of the two topics the zoning commission had discussed warranted convening an executive session under the pending claims or pending litigation exception in § 1-200 (6) (B). With respect to the first topic, the prior court decision regarding the permit extension, the FOIC determined that the pending claims or pending litigation exception did not apply because that prior case had been "finally adjudicated" before the executive session and, thus, was no longer pending. With respect to the second topic, the alleged permit violations, the FOIC ruled that the exception in § 1-200 (6) (B) did not apply because, at the time of the execu-

tive session, there was no pending claim or litigation relating to those alleged permit violations, and the zoning commission had not considered during the executive session filing an action against Handsome for those violations. Consequently, the FOIC ruled that the zoning commission had violated the act's open meetings requirement, as provided in General Statutes § 1-225 (a), by convening the executive session. The zoning commission thereafter appealed from the FOIC's final decision to the trial court.

The trial court reversed the FOIC's decision and held that the zoning commission properly convened its executive session.[8] Although the trial court agreed with the FOIC that the prior Superior Court case concerning the permit extension had been finally adjudicated and, thus, did not justify convening the executive session, the trial court disagreed with the FOIC regarding the zoning commission's discussion of the alleged permit violations. Therefore, the trial court concluded that the zoning commission was justified in convening the executive session to discuss the alleged permit violations because that constituted "consideration of action to enforce or implement legal relief or a legal right," which fell within the purview of the pending claims or pending litigation exception. (Internal quotation marks omitted.) The FOIC, Handsome, and the Cascellas appealed from the judgment of the trial court to the Appellate Court, and we transferred their appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the FOIC claims that the zoning commission could not have convened the executive session pursuant to the pending claims or pending litigation exception to discuss the alleged permit violations because the zoning commission was not a party to any pending or prospective litigation relating to Handsome's permit at that time. The zoning commission responds that the pending claims or pending litigation exception is not so narrow but, rather, allows public agencies to convene executive sessions to consider taking actions to "enforce or implement legal relief or a legal right" short of litigation. General Statutes § 1-200 (9) (C). The zoning commission also claims that, even if its executive session was *not* warranted by virtue of its discussions regarding the alleged permit violations, the trial court's judgment should be affirmed on the alternative ground that the zoning commission properly convened the executive session under the pending claims or pending litigation exception to discuss how to respond to the prior Superior Court decision regarding the permit extension. We conclude that the trial court's judgment must be reversed because the zoning commission was not justified in convening the executive session under the pending claims or pending litigation exception to discuss Handsome's alleged permit violations. We further conclude that the zoning commission's alternative ground for affirmance has no merit.[9]

We review the trial court's judgment pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. See, e.g., *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281, 77 A.3d 121 (2013). When a case presents only questions of law, an administrative agency's legal determinations are not entitled to any special deference, unless they previously have been subject to judicial review or to a governmental agency's time-tested interpretation. See, e.g., *Commissioner of Public Safety* v. *Freedom of Information Commission*, 301 Conn. 323, 336–37, 21 A.3d 737 (2011). Thus, because this case presents an issue of statutory construction that never has been subject to judicial scrutiny and lacks an agency's time-tested interpretation, the FOIC's determination that the zoning commission's executive session was not permissible under § 1-200 (6) (B) and (9) (C) is not entitled to any special deference.

"Instead, [w]ell settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 337–38. We turn now to the relevant statutes to determine whether the pending claims or pending litigation exception applied to the zoning commission's executive session.

The act provides in relevant part that "[t]he meetings of all public agencies, except executive sessions . . . shall be open to the public. . . ." General Statutes § 1-225 (a). The term " '[e]xecutive sessions' " is defined as "a meeting of a public agency at which the public is excluded for one or more of [five specified] purposes . . . ."[10] General Statutes § 1-200 (6). "We recognize that the basic policy of the [act] supports limiting the exceptions to open meetings. This court has said that it will construe the act to favor disclosure and that

exceptions to disclosure must be narrowly construed. . . . The burden of establishing the applicability of an exception rests upon the party claiming it. . . . We have not, however, hesitated to apply an exception where the party seeking it has met the burden of establishing that it applies." (Citations omitted; internal quotation marks omitted.) *Furhman* v. *Freedom of Information Commission*, 243 Conn. 427, 432, 703 A.2d 624 (1997).

The specific exception at issue in the present case is set forth in § 1-200 (6) (B), which allows public agencies to convene in executive session for the purpose of "strategy and negotiations with respect to pending claims or pending litigation to which the public agency . . . is a party until such litigation or claim has been finally adjudicated or otherwise settled . . . ." The act further defines a pending claim[11] and pending litigation[12] in § 1-200 (8) and (9), respectively. The parties in this case dispute the meaning of the term "pending litigation," as it is used in § 1-200 (6) (B) and defined in § 1-200 (9) (C).

The FOIC claims that the trial court incorrectly determined that the zoning commission's discussion in executive session about Handsome's alleged permit violations, and what zoning enforcement options the zoning commission could take in response to those alleged violations, constituted discussion concerning pending litigation under § 1-200 (6) (B) and (9) (C). The FOIC further argues that the term "pending litigation" in § 1-200 (6) (B) allows a public agency to convene an executive session only if there is a pending or prospective legal proceeding to which the agency is or will be a party. In contrast, the zoning commission claims that there is no such requirement in § 1-200 (6) (B). In support of its position, the zoning commission points to the fact that § 1-200 (9) (C) defines "pending litigation" as including "the agency's consideration of action to enforce or implement legal relief or a legal right." According to the zoning commission, a public agency may therefore convene an executive session to generally "[consider] action to enforce or implement legal relief or a legal right" *regardless* of whether there is a certain pending or prospective legal proceeding to which the agency is or will be a party. The zoning commission thus asserts that, because its members' discussion of their zoning enforcement options against Handsome constituted "consideration of action to enforce or implement legal relief or a legal right"; General Statutes § 1-200 (9) (C); its executive session fell within the scope of the pending claims or pending litigation exception of § 1-200 (6) (B). We reject the zoning commission's interpretation of § 1-200 (6) (B) and (9) (C) and agree with the FOIC that a public agency may convene an executive session under the pending claims or pending litigation exception only to discuss matters that are in connection with a prospective or pending

lawsuit or legal proceeding.

Having reviewed the language of § 1-200 (6) (B) and (9) (C), we conclude that the statute is plain and unambiguous. Although § 1-200 (9) (C) does not expressly tie a public agency's "consideration of action to enforce or implement legal relief or a legal right" to a certain pending or prospective legal proceeding, that does not end our inquiry. Section 1-200 (9) (C) must be read in conjunction with § 1-200 (6) (B), as "[i]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 9, 905 A.2d 55 (2006).

Section 1-200 (6) (B), which contains the pending claims or pending litigation exception itself, allows a public agency to convene an executive session only to discuss "pending litigation" to which the agency is "a party . . . ." We recently interpreted the term "party" in § 1-200 (6) (B) according to the definition of "party" in Black's Law Dictionary, which defines that term in relevant part as "[o]ne by or against whom a lawsuit is brought . . . ." Black's Law Dictionary (9th Ed. 2009) p. 1232; accord *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, supra, 310 Conn. 288. Thus, in order for § 1-200 (6) (B) to apply, the public agency either must be bringing or defending a prospective or pending lawsuit in court or some other legal action in an adjudicatory forum. See *Board of Education* v. *Freedom of Information Commission*, 217 Conn. 153, 161, 585 A.2d 82 (1991) ("pending" claim or litigation includes claim or litigation "already in existence and in progress," as well as imminent, threatened litigation not yet filed). To interpret § 1-200 (6) (B) otherwise would render the term "a party" superfluous. See *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[b]ecause [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" [internal quotation marks omitted]).

Turning to the facts of the present case, we conclude that the zoning commission was not justified in convening an executive session under § 1-200 (6) (B) to discuss its zoning enforcement options with respect to Handsome's original permit because, at that time, there was no pending litigation regarding the permit to which the zoning commission was a party. It is clear there was no pending or prospective litigation regarding Handsome's alleged permit violations. The FOIC specifically found that the zoning commission did not discuss in the executive session bringing a " 'zoning enforcement action' " or "an action . . . in court or in another forum" against Handsome. Even if the zoning commission members

had considered initiating a zoning enforcement action, § 1-200 (6) (B) still would not have applied because the zoning commission cannot be a party to its own regulatory proceeding. *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, supra, 310 Conn. 288 n.12 (when agency serves as decision-making body in proceeding, it is not "a party" to such proceeding); see also General Statutes § 8-3 (e) ("[t]he zoning commission shall provide for the manner in which the zoning regulations shall be enforced"); *Board of Public Safety* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-01-0506448-S (November 20, 2001) (board of public safety not justified in convening executive session under § 1-200 [6] [B] and [9] [C] to consider disciplinary action against employee because board could not be "a party" to its own disciplinary proceeding). Thus, we conclude that the zoning commission's discussion of Handsome's alleged permit violations did not warrant convening an executive session pursuant to § 1-200 (6) (B).

In reaching its conclusion to the contrary, the trial court relied on *Furhman* v. *Freedom of Information Commission*, supra, 243 Conn. 427, in which this court decided that the actions a public agency may consider taking under § 1-200 (9) (C) to "enforce or implement legal relief or a legal right" are not limited to *judicial* actions, such as filing a lawsuit in court. See *Furhman* v. *Freedom of Information Commission*, supra, 432–34. In applying *Furhman* to the present case, the trial court listed a number of actions to enforce the conditions of the original permit, short of filing a suit against Handsome, for which the zoning commission could have convened an executive session under § 1-200 (6) (B) and (9) (C) to discuss, including issuing a cease and desist order and more closely monitoring Handsome's grading activities. We disagree that *Furhman* resolves the present case.

In *Furhman*, this court indeed held that a public agency may convene an executive session to consider nonjudicial actions to enforce or implement legal relief or a legal right. See id. We did not hold, however, that a public agency may convene an executive session to consider taking such nonjudicial actions in the absence of a pending or prospective proceeding in a court or forum other than the agency itself. In *Furhman*, the New Milford town council convened an executive session to discuss actions it could take to defeat a permit application that was pending before the Department of Environmental Protection that, if allowed, would have permitted a waste management company to dump 150,000 tons of dredged waste sediments in the New Milford landfill. Id., 428–29. The New Milford town council convened an executive session to consider taking judicial action, including filing a declaratory judgment action and filing a lawsuit against the department,

and nonjudicial action, including hiring a lobbyist. Id., 429. Thus, in *Furhman*, the public agency in question was not only considering taking nonjudicial action in connection with a legal matter that *already was pending* before a different administrative agency, namely, the department, but also was considering filing a lawsuit. Thus, there was no question in *Furhman* that the New Milford town council convened its executive session to discuss a pending claim or pending litigation.

In contrast, in the present case, the zoning commission convened its executive session to discuss taking nonjudicial action in connection with a matter that was not pending in any court or forum other than the zoning commission itself. As we previously noted, the zoning commission did not consider filing a lawsuit against Handsome for its alleged permit violations, and there was no prospective or pending proceeding relating to those alleged violations in another forum. Although *Furhman* allows public agencies to consider taking nonjudicial action in executive session pursuant to § 1-200 (6) (B) and (9) (C), such as the nonjudicial zoning enforcement options that the zoning commission considered in its executive session, *Furhman* does not allow agencies to consider taking such action in executive session when the action would not be taken in connection with a pending or prospective proceeding in court or another forum. Consequently, *Furhman* does not resolve the issue in the present case.

Having decided that the zoning commission's discussion of the alleged permit violations did not come within the purview of § 1-200 (6) (B), we now must address the zoning commission's alternative ground for affirmance. The zoning commission claims that, contrary to the trial court's conclusion, its discussion during the executive session regarding how to respond to the prior Superior Court decision regarding Handsome's application to extend its permit warranted convening an executive session under § 1-200 (6) (B). Specifically, the zoning commission argues that the adverse Superior Court decision constituted "pending litigation" that was not yet "finally adjudicated or otherwise settled" under § 1-200 (6) (B) because the Superior Court retained jurisdiction over the matter until the zoning commission complied with the court's order. Thus, the zoning commission asks us to reverse the trial court's judgment with respect to that justification for the executive session and to conclude that the executive session was lawful under the act. In response, the FOIC argues that whether a claim or litigation is "finally adjudicated" under § 1-200 (6) (B) does not turn on a court's continuing jurisdiction to enter postjudgment orders and that the prior Superior Court case that the zoning commission discussed was finally adjudicated. We agree with the FOIC and conclude that the prior Superior Court case regarding the zoning commission's denial of the permit extension was finally adjudicated within the

meaning of § 1-200 (6) (B) before the zoning commission's executive session.

We begin by reviewing the language of the statute at issue. As we previously discussed, § 1-200 (6) (B) allows public agencies to convene an executive session to discuss pending claims or pending litigation to which it is a party "until such litigation or claim has been finally adjudicated or otherwise settled . . . ." Because the term "finally adjudicated" is not defined in the act, we are guided by the principle that "terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 372–73, 977 A.2d 650 (2009). The verb "adjudicate" is commonly defined as: "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised . . . ." Webster's Third New International Dictionary (2002) p. 27. The adjective "final" is commonly defined as: "not to be altered or undone . . . ." Id., p. 851. Reading these definitions together, we conclude that the statute is plain and unambiguous and that the term "finally adjudicated" refers to the point at which a court has decided the matter in question, and that decision cannot be altered or modified on appeal.[13] Thus, a matter is "finally adjudicated" under § 1-200 (6) (B) either upon completion of an appeal to the highest possible tribunal or upon expiration of a party's right to appeal.

Applying this interpretation of § 1-200 (6) (B) to the present case, we conclude that the prior Superior Court case regarding the permit extension was finally adjudicated before the zoning commission's executive session. The court in that administrative appeal reversed the zoning commission's decision on September 9, 2010, concluding that the zoning commission improperly had denied Handsome's application to extend the permit. In so concluding, the court determined on the merits the issues raised in that administrative appeal. Thus, the case had been adjudicated within the meaning of § 1-200 (6) (B). There is no doubt that, at the time of the zoning commission's May 5, 2011 executive session, approximately eight months after the court's decision, the case had been *finally* adjudicated within the meaning of § 1-200 (6) (B) because the twenty day period during which the zoning commission had the right to appeal the court's decision already had expired. See Practice Book § 63-1 (a). Accordingly, the zoning commission's discussion of the prior Superior Court decision did not warrant convening an executive session under § 1-200 (6) (B).

In reaching this conclusion, we reject the zoning commission's claim that, because the Superior Court continued to have jurisdiction over the matter, the administrative appeal involving the permit extension was not yet finally adjudicated when the zoning commission

convened its executive session. The zoning commission asserts that the case involving the permit extension was not finally adjudicated until the zoning commission fully complied with the judgment regarding the permit extension. The zoning commission reasons that the case could not have been finally adjudicated by the court deciding the administrative appeal because that court still could have held the zoning commission in contempt if it had not complied with the court's order.[14] This interpretation of "finally adjudicated," however, ignores the fact that, as we previously discussed, adjudication fundamentally pertains to legal issues being resolved and decided. Moreover, interpreting "finally adjudicated" as hinging on the possibility of postjudgment litigation would effectively remove the temporal limitation in § 1-200 (6) (B) and make the pending claims or pending litigation exception apply indefinitely to certain litigation.[15] Such an interpretation would undermine the basic policy of limiting the exceptions to the act's open meeting requirement. See, e.g., *Furhman* v. *Freedom of Information Commission*, supra, 243 Conn. 432. Accordingly, we reject the zoning commission's interpretation of "finally adjudicated" in § 1-200 (6) (B).

The judgment is reversed and the case is remanded with direction to render judgment denying the appeal.

In this opinion the other justices concurred.

[1] General Statutes § 1-200 et seq.

[2] The town of Monroe also was named as a plaintiff in the present case. In the interest of simplicity, we refer only to the zoning commission throughout this opinion.

[3] The zoning commission also filed a cross appeal in which it claims that the trial court improperly remanded the case to the FOIC to determine whether the zoning commission violated General Statutes § 1-231 (a) by having a zoning enforcement officer attend the executive session in question.

[4] Todd Cascella is the president and Mona Cascella is the secretary of Handsome, and we refer to them collectively as the Cascellas.

On appeal, Handsome and the Cascellas first claim that there is no evidence in the record to support the trial court's conclusion that the zoning commission discussed options other than litigation to enforce the conditions of the original permit, the basis on which the trial court decided that the executive session was justified under the pending claims or pending litigation exception of the act. Additionally, Handsome and the Cascellas claim that the executive session violated the act because the zoning commission's review of its enforcement options and general legal issues is not a valid reason for convening an executive session under the act.

[5] Because we are reversing the judgment of the trial court, we need not reach the zoning commission's claim in its cross appeal. Likewise, our resolution of the FOIC's appeal resolves the appeal brought by Handsome and the Cascellas, as they, too, are entitled to reversal of the trial court's judgment.

[6] The zoning commission extended the permit five years from the date the original permit expired but a mere two years from the date of the meeting. The zoning commission also granted the extension request subject to the posting of a bond and adherence to five "requirements" in addition to the conditions of the original permit.

[7] At the same time, Handsome and the Cascellas appealed from the zoning commission's decision to the Superior Court, challenging the imposition of conditions that they allege were not part of the original permit, the extension of the permit from the date of expiration of the original permit instead of from the date of the May 5, 2011 meeting, and the convening of the executive session, which they claimed violated the act. The trial court sustained this separate administrative appeal, and the zoning commission appealed from the trial court's judgment to the Appellate Court. That appeal was thereafter

transferred to this court. See *Handsome, Inc*. v. *Planning & Zoning Commission*, Docket No. SC 19262 (Conn.) (pending appeal filed August 9, 2013).

[8] The trial court rendered judgment after initially remanding the matter to the FOIC for clarification on four of the FOIC's findings and conclusions. After the FOIC issued a revised final decision clarifying those four findings and conclusions, the trial court rendered judgment sustaining the zoning commission's administrative appeal.

[9] As we previously discussed, our resolution of the FOIC's appeal resolves the separate appeal filed by Handsome and the Cascellas and makes it unnecessary for us to reach the zoning commission's claim in its cross appeal. See footnote 4 of this opinion.

[10] General Statutes § 1-200 (6) provides in its entirety: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (A) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting; (B) strategy and negotiations with respect to pending claims or pending litigation to which the public agency or a member thereof, because of the member's conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (C) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (D) discussion of the selection of a site or the lease, sale or purchase of real estate by the state or a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would adversely impact the price of such site, lease, sale, purchase or construction until such time as all of the property has been acquired or all proceedings or transactions concerning same have been terminated or abandoned; and (E) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-210."

[11] General Statutes § 1-200 (8) defines " '[p]ending claim' " as: "a written notice to an agency which sets forth a demand for legal relief or which asserts a legal right stating the intention to institute an action in an appropriate forum if such relief or right is not granted."

[12] General Statutes § 1-200 (9) defines " '[p]ending litigation' " as: "(A) a written notice to an agency which sets forth a demand for legal relief or which asserts a legal right stating the intention to institute an action before a court if such relief or right is not granted by the agency; (B) the service of a complaint against an agency returnable to a court which seeks to enforce or implement legal relief or a legal right; or (C) the agency's consideration of action to enforce or implement legal relief or a legal right."

[13] Although it is possible to imagine alternative interpretations of the term "finally adjudicated," none would be reasonable in the context of the act. For instance, the term "finally adjudicated" could be interpreted as referring to the point at which a court simply renders judgment because such a judgment would be "final" insofar as a party could appeal from it. Such an interpretation, however, would not comport with the ordinary meaning of the term "final," which, as we previously noted, describes something that is "not to be altered or undone . . . ." Webster's Third New International Dictionary, supra, p. 851. The term "finally adjudicated" therefore cannot reasonably be interpreted as referring to the point at which a court merely renders judgment because, although a matter is adjudicated upon a court's rendering judgment, it is not necessarily *finally* adjudicated, as the judgment could be subject to a motion to reconsider or to open.

In theory, the term "finally adjudicated" also could be interpreted as referring to the point at which a party seeks leave to appeal after its right to appeal has expired, and the appeal is either heard or dismissed. Such an interpretation is theoretically possible because the general appeal period in Connecticut is set by the rules of practice, and, thus, the period is not jurisdictional, and appellate courts have discretion to hear a late appeal. C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (4th Ed. 2014) § 4-2:1, p. 222. This interpretation too, however, would belie common sense. The term "finally adjudicated" cannot reasonably be interpreted as referring to the point at which a party seeks leave to appeal because it is possible that a party never will do so. Because the term "finally adjudicated" is used in § 1-200 (6) (B) to establish a temporal limitation on when a public agency may convene an executive session, it would not be reasonable to interpret that term as referring to an event that never may occur.

Thus, neither of these alternative interpretations of the term "finally adjudicated" would be reasonable in the context of the act. The only reasonable

interpretation of "finally adjudicated" is that it refers to the point at which a party has exhausted its right to appeal from the judgment in question or the point at which that right has expired.

[14] In support of this claim, the zoning commission relies on *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002) (*AvalonBay Communities*), in which this court held that a trial court that decided an administrative appeal had continuing jurisdiction to enter postjudgment orders when a public agency fails to comply with its ruling. While the Superior Court undoubtedly has such authority, the principle announced in *AvalonBay Communities* does not address what constitutes litigation that has been "finally adjudicated" under § 1-200 (6) (B). Thus, *AvalonBay Communities* does not resolve the issue presented in the zoning commission's alternative ground for affirmance.

[15] For instance, if a trial court rendered judgment awarding money to one party, the underlying litigation would not be "finally adjudicated," according to the zoning commission, until the losing party has satisfied the judgment. The temporal limits of § 1-200 (6) (B) cannot depend on a party's satisfying a trial court's judgment because that could allow a public agency to intentionally avoid satisfying a judgment in order to continue meeting in executive session.

---