## ANSONIA LIBRARY BOARD OF DIRECTORS *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 35288S
ANSONIA-MILFORD AT MILFORD

Memorandum filed August 26, 1991

*Sheehy & Dillon,* for the plaintiff.

*Regina M. Hopkins-Griggs,* for the named defendant.

*Nicholas B. Wynnick,* pro se, the individual defendant.

FULLER, J. This is an appeal from a decision of the freedom of information commission (FOIC) issued February 20, 1991, that two actions taken by the plaintiff, the Ansonia library board of directors (library board), on June 4, 1990, violated General Statutes §§ 1-18a and 1-21. The library board's appeal claims under General Statutes §§ 1-21i (d) and 4-183 that both rulings of the FOIC were incorrect and raises the following questions: (1) whether a municipal agency can hold an executive session to discuss a possible appeal from a decision of the FOIC when the decision was in favor of the agency and the appeal period from the deci-

sion has not expired, but the complaining party has not indicated whether he will take an appeal; and (2) whether a meeting of a subcommittee of the agency for the purpose of selecting agency officers violates the open meeting provisions of § 1-21.

The library board has apparently been the respondent in numerous complaints to the FOIC by Nicholas B. Wynnick, an Ansonia resident. One complaint resulted in a final decision by the FOIC on May 9, 1990, in favor of the library board. The library board scheduled a regular meeting for June 4, 1990, but the meeting agenda did not indicate that an executive session would be called. When the board convened on June 4, 1990, it went into executive session to discuss the FOIC's final decision. The library board does not claim that this was an emergency meeting or that an emergency meeting was required, but relies upon General Statutes § 1-18a (e) (2), which allows an executive session for "strategy and negotiations with respect to pending claims and litigation to which the public agency . . . is a party until such litigation or claim has been finally adjudicated or otherwise settled." While the library board normally consists of nine members, as a result of resignations, there were only six members of the library board and five of them attended the meeting. Presumably, the library board members discussed what they would do if Wynnick appealed from the FOIC decision, but at the time of the meeting Wynnick had not indicated orally or in writing that he had any intention of appealing. Any appeal from the decision of the FOIC had to be taken to the Superior Court within forty-five days after the FOIC issued its decision; General Statutes § 4-183 (c); so the meeting of the library board was during the appeal period. Wynnick, however, never took an appeal either before or after the appeal period expired.

At the public portion of the June 4, 1990 meeting, two senior members of the library board were asked

to be a nominating committee to select board members to fill the positions of president and vice-president, which were vacant as a result of prior resignations. After the meeting adjourned, the two member nominating committee, Violet O'Donnell and Michael Dalton, called another library board member, Joan Fitzgerald, into a nearby room to discuss whether she would fill one of the positions. The door to the room was open, and during the discussion another library board member, Susan Hawley, walked into the room. Hawley was asked if she wished to remain as secretary of the library board.

Wynnick appealed to the FOIC claiming that both the executive session and the postmeeting gathering in the small room near the regular meeting room violated the freedom of information statutes. The FOIC concluded that the library board violated §§ 1-18a (e) (2) and 1-21 by convening an executive session for an improper purpose because the possibility that Wynnick would appeal the prior decision was not a pending claim or litigation on June 4, 1990. The FOIC also concluded that the gathering of four of the six remaining members of the library board after the public meeting was adjourned was a meeting as defined in § 1-18a (b) and violated the open meeting provisions of § 1-21.

The library board appealed that decision to this court. While the FOIC claims that the board has not proven aggrievement, that claim is rejected for the same reason that the defendants' prior motion to dismiss the appeal was denied. An order of the FOIC to a municipal agency to comply with the freedom of information statutes in the future is an appealable decision. *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 501–503, 503 A.2d 1161 (1986) (possibility of criminal sanctions allows appeal); see also *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 650–51, 556 A.2d 1020 (1989).

The essential facts found by the FOIC are not disputed by the library board. The question on appeal is whether the two decisions of the FOIC were incorrect as a matter of law. *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 158–59, 585 A.2d 82 (1991); *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986). The first claim of the library board is that a meeting of a nominating committee is not a meeting of the agency. The library board claims that it was important for the nominating committee to take action immediately to replace the officers of the board in order to carry on the regular business of the board at its next meeting, and that there was no attempt to exclude the public from the brief conference in another room immediately after the meeting adjourned at the regular meeting room. Section 1-21 (a) provides in part that "[t]he meetings of all public agencies, except for executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public." That same statute requires notice of the matters to be considered at the meeting, and business must be limited to the matters stated in the agency's filed agenda. These provisions were not complied with if the nominating committee is a public agency as claimed by the FOIC. Section 1-18a (b) defines a meeting as including the "convening or assembly of a quorum of a multimember public agency." In the absence of a statute or other provision, a quorum is generally a majority of the members of an agency who can act. There were only six regular members of the library board on June 4, 1990. The four members were arguably a quorum when one member of the library board entered the room where three other members were discussing matters pertaining to the board's affairs.[1] If a quorum existed the discussions were a meeting subject to § 1-21 (a).

---

[1] A quorum is the minimum number of members of a body required to be present for the body to transact business, and is usually a majority unless

Even without the presence of a fourth board member, the meeting of the nominating committee with another board member was also a meeting under § 1-18a (b). In 1983, § 1-18a (a), which defines "public agency," was changed to include any committee of a town agency or board. It is clear from the history of the statutory amendments that the legislature intended committees of public agencies that are subunits composed of members of the public agency to be subject to the Freedom of Information Act. *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 695–97, 595 A.2d 313 (1991). The meeting of the two members of the nominating committee was sufficient to trigger the statutory requirements. See also *Emergency Medical Services Commission* v. *Freedom of Information Commission,* 19 Conn. App. 352, 355, 561 A.2d 981 (1989), holding that the phrasing of § 1-18a (b) does not require a quorum as a necessary precondition to a hearing or proceeding of a public agency.

Whether the library board could convene an executive session to discuss the prior FOIC decision turns on whether the possibility of a further appeal from Wynnick, which still existed when the executive session was held, can be considered a pending claim or pending litigation under the exemption in § 1-18a (e) (2). The pending claims and litigation exception was discussed in *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 159–63, 585 A.2d 82 (1991). The Supreme Court concluded that a pending claim is one that is already in existence and in progress but that for a claim to be "pending" it does not have to be formally under adjudication. The court

a different number is expressly prescribed. Ballentine's Law Dictionary, (3d Ed.); *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 696 n.12, 595 A.2d 313 (1991). It is unclear under Connecticut law whether the quorum of an agency having less than its full authorized membership is a majority of the existing or authorized number of members.

further indicated that definition of the parameters of the term "pending" should be left to the administrative agency on a case-by-case basis. Id., 161–62. On the facts of that case, the board of education had received a letter containing a threat of litigation from an attorney if actions specified in the letter were not taken by the board by a designated date. The claim was in existence and in progress and was therefore a pending claim. Id., 162. That situation does not exist here. The statute provides an exemption for pending claims and litigation only "until such litigation or claim has been finally adjudicated." The decision of the FOIC rejecting Wynnick's claim on May 9, 1990, was a final adjudication of the claim even though the possibility of a further appeal existed when the board met in executive session. By analogy, in the trial of a civil action, once a judgment is rendered it is considered final even though the possibility of reversal by a pending appeal exists. *Salem Park, Inc.* v. *Salem,* 149 Conn. 141, 144, 176 A.2d 571 (1961). In fact, the finality of a trial court judgment is not directly affected for most purposes by the fact of a pending appeal in an appellate court even though an appeal automatically stays enforcement of the judgment. *Preisner* v. *Aetna Casualty & Surety Co.,* 203 Conn. 407, 414, 525 A.2d 83 (1987). Moreover, the filing of an appeal from the decision of an administrative agency does not of itself stay enforcement of an agency decision; a stay of enforcement of the agency decision must be applied for and is discretionary with the Superior Court. General Statutes § 4-183 (f). Unless Wynnick took an appeal to the Superior Court, the decision of the FOIC was a final adjudication of the appeal to it under § 1-21 (b), and as such was not the proper subject of an executive session. General Statutes § 1-18a (e) (2).

The library board contends that, at the time of the executive session even though Wynnick had not indi-

cated he would appeal the FOIC's decision, the board reasonably expected an appeal from Wynnick, particularly considering his prior litigious conduct towards the library board. The board makes a related claim that it should not have to wait until the appeal was actually taken to discuss litigation strategy to defend a further appeal by Wynnick, and that until the appeal period under § 4-183 (c) had expired, the possibility of an appeal could be considered "pending litigation." This expansive reading of the statute would be more persuasive if, as in *Board of Education* v. *Freedom of Information Commission,* supra, Wynnick had indicated that he was considering or was going to take an appeal. While the intent and scope of § 1-18a (e) (2), which was in effect at the time of the executive session is not entirely clear, too broad a reading of the "pending claims or litigation" exception would encourage executive sessions and undercut the fundamental purpose of the Freedom of Information Act, namely openness of proceedings of public, governmental agencies. The statute should not be extended to allow an executive session during the time for taking an appeal under § 4-183 from a final decision of an administrative agency where no further appeal was in fact threatened.

An amendment of § 1-18a effective October 1, 1991, provides confirmation of legislative intent that the executive session exception does not apply to the meeting in the present case. Public Acts 1991, No. 91-140, changed the phrase of "pending claims and litigation" in General Statutes §§ 1-18a (e) (2) and 1-19 (b) (4) to "pending claims or pending litigation," and added definitions of "pending claim" and "pending litigation" to § 1-18a. A pending claim is defined as "a written notice to an agency which sets forth a demand for legal relief or which asserts a legal right stating the intention to institute an action in an appropriate forum if such relief or right is not granted." Public Acts 1991, No. 91-140,

§ 1. Pending litigation is defined as follows: "(1) A written notice to an agency which sets forth a demand for legal relief or which asserts a legal right stating the intention to institute an action before a court if such relief or right is not granted by the agency; (2) the service of a complaint against an agency returnable to a court which seeks to enforce or implement legal relief or a legal right; or (3) the agency's consideration of action to enforce or implement legal relief or a legal right." Public Acts 1991, No. 91-140, § 1.

After the FOIC made a decision on Wynnick's claim to it, he no longer had a pending claim under the statutory definition. The possibility that he might bring a further appeal to the Superior Court, without actual notice that an appeal would be brought, is not "pending litigation." While a statutory amendment affecting substantive rights usually does not apply retroactively, there are exceptions to that rule. Moreover, there is a well established principle of statutory construction that an amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. *Turner* v. *Turner,* 219 Conn. 703, 717, 595 A.2d 297 (1991); *Franklin* v. *Berger,* 211 Conn. 591, 603, 560 A.2d 444 (1989); *Preston* v. *Connecticut Siting Council,* 21 Conn. App. 85, 90, 571 A.2d 157, cert. denied, 215 Conn. 803, 574 A.2d 221 (1990). While the 1991 amendments on their face are a clarification of the existing statutory provision, confirmation of the purpose of the amendment is shown by statements made in legislative committee discussions and floor debate of the amendments, which can be considered a source of legislative intent. *Burge* v. *Stonington,* 219 Conn. 581, 595, 594 A.2d 945 (1991). The decision in *Board of Education* v. *Freedom of Information Commission,* supra, 160–61, indicated that it covered more than claims presently in litigation or pending before a court or some other adjudicatory

body, but did not define the parameters of the provision. This prompted legislation to define pending claims and pending litigation and to limit the effect of and to implement part of the Supreme Court decision. See Substitute House Bill 7046; 34 H.R. Proc., Pt. 10, 1991 Sess., pp. 3897–98, 3902–3903; 34 S. Proc., Pt. 5, 1991 Sess., pp. 1632–33; Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt. 1, 1991 Sess., pp. 256, 284, 287, 291–92. The discussions clearly indicate legislative intent that an agency should not go into executive session unless it had written notice of intent to start litigation, or the litigation has commenced.

The library board does not claim that it met with its counsel in executive session for the purpose of confidential communications protected from disclosure under the attorney-client privilege based on §§ 1-18a (e) (5) and 1-19 (b) (10). See *Zoning Board of Appeals* v. *Freedom of Information Commission,* supra, 500. Under the facts of the present case as disclosed by the record, the library board was not allowed to go into executive session because of the unstated possibility that Wynnick might appeal the board's decision.

The appeal is dismissed.