******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# CITY OF MERIDEN ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (SC 20378)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to a provision of the Freedom of Information Act (§ 1-200 (2)), the term "meeting" means "any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power."

The defendant Freedom of Information Commission appealed to this court from the judgment of the Appellate Court, which reversed the trial court's judgment dismissing the administrative appeal of the plaintiffs, the city of Meriden and its city council. Four leaders of the twelve member city council had gathered at city hall with the mayor and the retiring city manager to discuss the upcoming search for a new city manager. The four member leadership group agreed to submit a resolution to create a city manager search committee to the full city council for its consideration at an upcoming meeting and thereafter drafted a proposed resolution listing the names of people to be considered for appointment to the committee and detailing the committee's duties. Thereafter, a complaint was filed with the commission, alleging that the leadership group gathering was an unnoticed and private meeting, in violation of the open meetings provision of the Freedom of Information Act (§ 1-225 (a)). The commission concluded that the gathering was a "proceeding" within the meaning of § 1-200 (2), such a proceeding constituted a "meeting" within the meaning of that subdivision, and the plaintiffs violated § 1-225 (a) by failing to properly notice the gathering and to conduct it in public view. Subsequently, the plaintiffs appealed from the commission's decision to the trial court. In dismissing the plaintiffs' appeal, the trial court concluded that the commissioner's factual findings and conclusions were supported by substantial evidence and that the gathering constituted a meeting within the meaning of § 1-200 (2). In reversing the trial court's judgment, the Appellate Court concluded that the gathering did not constitute a meeting under § 1-200 (2) and, thus, did not trigger the open meeting requirements of § 1-225 (a). Specifically, the Appellate Court disagreed with the trial court's interpretation of the phrase "hearing or other proceeding" in § 1-200 (2) as meaning a gathering among agency members that constituted a step in the process of agency-member activity. The Appellate Court explained that, consistent with the legal dictionary definitions of "proceeding" and "hearing," "hearing or other proceeding" in § 1-200 (2) refers to a process of adjudication, which falls outside the scope of activities conducted during the gathering at issue. On the granting of certification, the commission appealed to this court. *Held* that, because the gathering of the city council's four member leadership group with the mayor and the retiring city manager was not a "hearing or other proceeding" of a public agency under § 1-200 (2), it was not subject to the open meeting requirements of § 1-225 (a), and, accordingly, the judgment of the Appellate Court was affirmed: the phrase "hearing or other proceeding," as a whole, connoted a formal process by which official business was authorized to be conducted, and, when the phrase "hearing or other proceeding" in § 1-200 (2) was considered in the context of the entire statutory framework, it was apparent that a group comprising less than a quorum of a public agency, such as the four member leadership group, may conduct a hearing or other proceeding within the meaning of § 1-200 (2) only when it has express authority to take action; accordingly, because the mayor and the retiring city manager had no authority to create the city manager search committee, there was no evidence in the record that the leadership group was formed pursuant to any official resolution of the city council, and the leadership

group had no independent, express authority to take any action regarding the formation of the search committee that could legally bind the city council, the gathering was not a hearing or other proceeding for purposes of § 1-200 (2); moreover, this court disagreed with the Appellate Court's restrictive reading of "hearing or other proceeding," which would have circumscribed the applicability of the open meeting requirements to adjudicative activities, insofar as public agencies conduct hearings or proceedings that do not have adjudicative functions associated with them; furthermore, this court declined to adopt the commission's proposed definition of "hearing or other proceeding" as including all communications between government officials that constitute "a step in the process of agency-member activity," regardless of whether such group has authority to act, because that interpretation would yield absurd results and render meaningless the quorum requirement in the second and third definitions of "meeting" under § 1-200 (2).

Argued September 8, 2020—officially released March 12, 2021*

*Procedural History*

Appeal from the decision of the named defendant, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Henry S. Cohn*, judge trial referee, exercising the powers of the Superior Court, rendered judgment dismissing the plaintiffs' appeal, from which the plaintiffs appealed to the Appellate Court, *Prescott*, *Moll* and *Bishop*, *Js.*, which reversed the trial court's judgment and remanded the case to that court with direction to render judgment sustaining the plaintiffs' appeal; thereafter, the named defendant, on the granting of certification, appealed to this court. *Affirmed*.

*Valicia Dee Harmon*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellant (named defendant).

*Stephanie Dellolio*, city attorney, for the appellees (plaintiffs).

*Proloy K. Das*, *Kari L. Olson* and *Matthew A. Ciarleglio* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

McDONALD, J. Although all meetings of individuals may be gatherings, the general question before us is whether all gatherings of individuals are necessarily meetings. More specifically, this certified appeal requires us to construe the meaning of the term "meeting" as it is defined in the Freedom of Information Act (act), General Statutes § 1-200 et seq. Even more precisely, the narrow issue we must decide is whether a gathering of individuals comprising less than a quorum of the members of a city council, together with the mayor and the city manager, constitutes a "hearing or other proceeding of a public agency"; General Statutes § 1-200 (2); and, therefore, a "meeting" within the meaning of the act. If that gathering was a meeting, it was subject to the open meeting requirements of the act. See General Statutes § 1-225 (a).

The defendant Freedom of Information Commission appeals from the judgment of the Appellate Court, which reversed the judgment of the trial court and concluded that the plaintiffs, the city of Meriden and the Meriden City Council,[1] did not violate the open meeting requirements of the act. *Meriden* v. *Freedom of Information Commission*, 191 Conn. App. 648, 650, 663, 665, 216 A.3d 847 (2019). On appeal, the commission claims that the Appellate Court incorrectly determined that a "hearing or other proceeding" refers to a process of adjudication, which fell outside the scope of the activities conducted during the gathering at issue in this case. (Internal quotation marks omitted.) Id., 659.

The Appellate Court's decision sets forth the facts and procedural history; see id., 651–53; which we summarize in relevant part. In January, 2016, four members of the twelve member city council, namely, the majority and minority leaders and their respective deputies (leadership group), gathered at the city hall with the mayor and the retiring city manager to discuss the upcoming search for a new city manager.[2] At the gathering, the leadership group agreed to submit a resolution to create a city manager search committee to the full city council for its consideration at an upcoming meeting. The leadership group drafted a one page proposed resolution, which listed the names of people to be considered for appointment to the committee and detailed the duties of the committee, including recommending to the city council suitable candidates for the city manager position. At a city council meeting later that month, the leadership group introduced the resolution, which subsequently was placed on the city council's consent calendar and was unanimously adopted.

Following the city council's meeting, an editor from the Meriden Record Journal[3] filed a complaint with the commission, alleging that the leadership group gathering was an unnoticed and private meeting, in violation

of § 1-225 (a).[4] The commission held a hearing at which both parties appeared and presented evidence. The commission then issued a final decision, concluding that the leadership group gathering violated the act. It found that the leadership group "gather[s] regularly with the mayor and the city manager" to remain informed about issues that the city council may need to address. *Brechlin* v. *City Council*, Freedom of Information Commission, Docket No. FIC 2016-0066 (November 16, 2016) p. 2. During these gatherings, the group "decides whether an issue requires city council action, and when necessary . . . discusses and drafts a resolution to go on the agenda of a city council meeting." Id. The commission also found that these gatherings are not intended to constitute a quorum of the city council, which requires a meeting of at least seven council members. Id. Additionally, the commission explained that, in gathering to discuss the formation of a city manager search committee and drafting the resolution, "the leadership group [had] met to discuss or act upon a matter over which the leadership [group] and the city council as a whole ha[d] supervision and control." Id. The commission took administrative notice of the city council's minutes of the January, 2016 meeting and found that the resolution was adopted at the city council meeting. Id.

The commission rejected the plaintiff's claim that the leadership group gathering was not a "meeting" under § 1-200 (2) because the commission found that, contrary to the plaintiff's assertions, the communications at the leadership group gathering were not limited to notice of meetings or the setting of agendas. Id. The commission also rejected the plaintiff's claim that the gathering was not a "meeting" because a quorum was not present. Id. The commission considered the Appellate Court's decision in *Emergency Medical Services Commission* v. *Freedom of Information Commission*, 19 Conn. App. 352, 561 A.2d 981 (1989), in which the court held that the plain language of the predecessor statute to § 1-200 (2) "does not require a quorum as a necessary precondition to 'any hearing or other proceeding of a public agency . . . .'" Id., 355; see *Brechlin* v. *City Council*, supra, Docket No. FIC 2016-0066, p. 3. It also considered the Appellate Court's decision in *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 529, 711 A.2d 741 (1998), appeal dismissed, 249 Conn. 291, 732 A.2d 752 (1999), in which the court held that a gathering, akin to a convening or assembly, of less than a quorum of members of a public agency, generally does not constitute a meeting. See id., 531; see also *Brechlin* v. *City Council*, supra, p. 2. The commission explained that the former decision was more applicable to the facts of the present case. The commission concluded that the gathering was a "proceeding" within the meaning of § 1-200 (2), and that such a proceeding constituted a "meeting" within the meaning of that sub-

division. *Brechlin* v. *City Council*, supra, p. 6. As a result, the commission concluded that the plaintiff had violated § 1-225 (a) by failing to properly notice the leadership group gathering and conduct it in public view. Id. The commission ordered the plaintiff to "strictly comply" with the open meeting requirements of § 1-225 (a) and, although not raised in the complaint, "advised the plaintiff that the leadership group may, in its own right, constitute a 'committee of' the city council pursuant to § 1-200 (1) . . . ." Id.; see also footnote 6 of this opinion.

The plaintiff appealed from the commission's decision to the Superior Court, arguing that a gathering of elected officials without a quorum present does not constitute a "meeting" in accordance with *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 529. Thereafter, the trial court dismissed the plaintiff's appeal, concluding that the Appellate Court's holding in *Windham* "is not completely determinative and, therefore, [is] not binding on the issue" of whether the leadership group gathering fell within the definition of "meeting" under § 1-200 (2). The trial court explained that "there are times, factually, [when] certain agency members are merely 'convening' and there is a requirement of a quorum under § 1-200 (2), and there are times, factually, [when] agency members, in the language of the [commission] . . . are gathering with the implicit authorization of the city council as a whole, and this gathering 'constituted a step in the process of agency-member activity.' " The court stated that the "commission's factual findings and . . . conclusions . . . [were] supported by substantial evidence" and concluded that the leadership group gathering constituted a meeting under § 1-200 (2). See *Meriden* v. *Freedom of Information Commission*, supra, 191 Conn. App. 653.

Thereafter, the plaintiff appealed from the trial court's judgment to the Appellate Court. The Appellate Court "disagree[d] with the trial court's interpretation of . . . 'hearing or other proceeding' . . . as meaning a gathering among agency members that constitutes 'a step in the process of agency-member activity . . . .' " Id., 659. The Appellate Court considered the definitions of "proceeding" and "hearing"; id., 658–59; and explained that they "allude to adjudicative activities." Id., 659. The court also explained that it was bound by its "holding in *Windham* v. *Freedom of Information Commission*, supra, 48 Conn. App. 531, that a gathering, akin to a 'convening or assembly' as opposed to a 'hearing or other proceeding,' of less than a quorum of members of a public agency generally does not constitute a 'meeting' within the meaning of § 1-200 (2)." *Meriden* v. *Freedom of Information Commission*, supra, 191 Conn. App. 662. The court noted that this holding was not in conflict with its holding in *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 355. See *Meriden* v.

*Freedom of Information Commission*, supra, 663. The court explained that, consistent with the legal dictionary definitions of "proceeding" and "hearing," the "proper reading of [§ 1-200 (2)] is that 'hearing or other proceeding' refers to a process of adjudication, which falls outside the scope of activities conducted during the leadership group gathering in the present case." Id., 659. Accordingly, the Appellate Court reversed the judgment of the trial court, concluding that the gathering of the leadership group did not constitute a meeting under § 1-200 (2) and, thus, did not trigger the open meeting requirements of § 1-225 (a). Id., 660, 663.

Thereafter, the commission filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court properly construe the term 'proceeding,' contained in . . . § 1-200 (2), not to include a gathering of four political leaders of the . . . [c]ity [c]ouncil at which they discussed a search for a new city manager?" *Meriden* v. *Freedom of Information Commission*, 333 Conn. 926, 217 A.3d 994 (2019).

On appeal to this court, the commission contends that the Appellate Court improperly restricted the meaning of "proceeding" to adjudicative activities. Specifically, the commission contends that the Appellate Court consulted only legal dictionaries for the definitions of "proceeding" and "hearing," and failed to consider the strong, open government policy embodied in the act. The commission asks this court to define "proceeding" according to its standard dictionary definition, which will accord "with the open meetings principles espoused in the legislative history . . . ." The commission argues that there is sufficient evidence in the administrative record to conclude that the leadership group conducted a "proceeding" within the meaning of § 1-200 (2) and that, in doing so, the plaintiff failed to comply with the open meeting requirements of § 1-225 (a).

In response, the plaintiff contends that the Appellate Court correctly determined that "proceeding" refers to adjudicative activities conducted through an evidentiary process by a public agency empowered to do so. Because the gathering in this case was made up of less than a quorum of the members of the city council and did not serve an adjudicatory function, the plaintiff contends that the Appellate Court properly held that the gathering was not subject to the open meeting requirements of the act.

We begin with the relevant legal principles and standard of review. "This court reviews the trial court's judgment pursuant to the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . . Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for

conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Similarly], this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] a governmental agency's time-tested interpretation . . . . Even if time-tested, we will defer to an agency's interpretation of a statute only if it is reasonable; that reasonableness is determined by [application of] our established rules of statutory construction." (Citation omitted; internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 379–80, 194 A.3d 759 (2018).

Although the determination of what constitutes a "meeting" under § 1-200 (2) has been subjected to judicial interpretation, the issue in this case requires us to construe § 1-200 (2) to determine whether the leadership group gathering constituted a "hearing or other proceeding" under that subdivision and, therefore, a meeting. Because the definition of "proceeding" that the commission advanced before the Appellate Court, that is, "a step in the process of agency-member activity"; (internal quotation marks omitted) *Meriden* v. *Freedom of Information Commission*, supra, 191 Conn. App. 655; has not "been subjected to judicial scrutiny or consistently applied by the agency over a long period of time," we need not afford deference to the commission's interpretation.[5] (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 283, 77 A.3d 121 (2013).

Whether the gathering of the leadership group constituted a "hearing or other proceeding of a public agency," and, therefore, a meeting under § 1-200 (2), is a question of statutory interpretation over which our review is plenary. See, e.g., *Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 810, 104 A.3d 727

(2014). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 810–11.

We are mindful that our inquiry into the statutory definition of "meeting" contained in § 1-200 (2) "must commence with the recognition of the legislature's general commitment to open governmental proceedings. The overarching legislative policy of the [act] is one that favors the open conduct of government and free public access to government records." (Internal quotation marks omitted.) *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 711–12, 663 A.2d 349 (1995).

We begin with the text of the statute. Section 1-200 (2) provides in relevant part that a " '[m]eeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. . . ." The parties agree that a quorum of a multimember public agency is not required for a "hearing or other proceeding of a public agency" to constitute a meeting under § 1-200 (2). We also agree. There are three distinct statutory definitions of "meeting": (1) "any hearing or other proceeding of a public agency," (2) "any convening or assembly of a quorum of a multimember public agency," and (3) "any communication by or to a quorum of a multimember public agency . . . ." General Statutes § 1-200 (2). The term "quorum" is not contained in the first definition but is included in the two subsequent definitions. The language of the statute, therefore, provides that the act's open meeting requirements apply to "any hearing or other proceeding of a public agency," regardless of the number of people attending. See *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 356

(noting that there was no reason to read quorum requirement into first clause of predecessor statute to § 1-200 (2)). As such, this case requires us to determine whether the leadership group gathering was a "hearing or other proceeding of a public agency," which does not require a quorum to constitute a meeting.

The terms "hearing" and "proceeding" are not defined in the act. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Studer* v. *Studer*, 320 Conn. 483, 488, 131 A.3d 240 (2016); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly").

We look first to the dictionary definition of "hearing" because § 1-200 (2) provides in relevant part that "any *hearing or other proceeding* of a public agency" constitutes a "meeting." (Emphasis added.) The phrase "other proceeding" complements and must be understood in light of the term "hearing." A "hearing" is defined variously as an "opportunity to be heard" and a "session, as of an investigatory committee, at which testimony is taken from witnesses." The American Heritage Dictionary of the English Language (New College Ed. 1976) p. 607. A "hearing" is also defined as "an instance or a session in which testimony and arguments are presented, [especially] before an official, [such] as a judge in [a legal action]." The Random House Dictionary of the English Language (Unabridged Ed. 1966) p. 654.

The American Heritage Dictionary defines "proceeding" broadly as a "course of action," a "sequence of events occurring at a particular place or occasion," and a "record of business carried on by a society or other organization . . . ." The American Heritage Dictionary of the English Language, supra, p. 1043; see also The American College Dictionary (1955) p. 965 (defining "proceeding" as "the instituting or carrying on of an action at law"). Similarly, "proceeding" is also defined as an "act, measure or step in a course of business or conduct . . . ." Webster's New International Dictionary (2d Ed. 1953) p. 1972. Black's Law Dictionary defines "proceeding" as, among other things, "the form and manner of conducting juridical business before a court or judicial officer . . . including all possible steps in an action from its commencement to the execution of judgment." Black's Law Dictionary (4th Ed. 1968) p. 1368; see also Black's Law Dictionary (11th Ed. 2019)

p. 1457 (defining "proceeding" as "[a]ny procedural means for seeking redress from a tribunal or agency," "[t]he business conducted by a court or other official body" and "a hearing"). When "other proceeding" is considered in conjunction with the precedent term "hearing," the phrase as a whole connotes a formal process by which official business is authorized to be conducted.

As the Appellate Court noted in its decision, certain definitions in legal dictionaries of "proceeding" and "hearing" also connote adjudicative activities. See *Meriden* v. *Freedom of Information Commission*, supra, 191 Conn. App. 658 ("Ballentine's Law Dictionary defines a 'proceeding' as, inter alia, 'any application *to a court of justice*, however made, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object' " (emphasis in original)), quoting Ballentine's Law Dictionary (3d Ed. 1969) p. 1000; see also *Meriden* v. *Freedom of Information Commission*, supra, 658 ("[A] 'hearing' is defined variously as '[t]he *presentation and consideration of proofs and arguments*, and determinative action with respect to the issue,' and '[t]he *presentation of a case or defense* before an administrative agency, with opportunity to introduce evidence in chief and on rebuttal, and to cross-examine witnesses, as may be required for a full and true disclosure of the facts.' . . . A 'hearing' is also defined as '[a] judicial session, [usually] open to the public, *held for the purpose of deciding issues of fact or of law*, sometimes with witnesses testifying,' and '[a]ny setting in which an affected person *presents arguments to a [decision maker]* . . . .' " (Citation omitted; emphasis in original.)). In consulting only legal dictionaries, however, the Appellate Court did not recognize that public agencies conduct other types of "hearing[s] or other proceeding[s]" that do not have adjudicative functions associated with them. For instance, many public agencies conduct public hearings that allow interested parties to address the agency on a matter that may be the subject of future, nonadjudicative action by the agency. Alternatively, the public agency may conduct an invitational forum in which it solicits the views of people with specialized expertise on a particular subject to inform or educate the members of the public agency on that subject. By so narrowly construing "hearing" and "proceeding," the Appellate Court did not animate the policy favoring public access to government "hearing[s] or other proceeding[s] . . . ." General Statutes § 1-200 (2); see *Glastonbury Education Assn.* v. *Freedom of Information Commission*, supra, 234 Conn. 711–12; see also *NPC Offices, LLC* v. *Kowaleski*, 320 Conn. 519, 528 n.3, 131 A.3d 1144 (2016) ("[a]lthough we have previously relied on Black's Law Dictionary in order to ascertain the common, natural, and ordinary meaning and usage of a term . . . we note that it is often not the best source for determining

the ordinary use of a term" (citation omitted; internal quotation marks omitted)). As such, we disagree with the Appellate Court's restrictive reading of "hearing or other proceeding," which would circumscribe the applicability of the act's open meeting requirements to adjudicative activities.

The meaning of "hearing or other proceeding" is clarified further when the phrase is considered in the context of the entire statutory framework. See, e.g., *Studer* v. *Studer*, supra, 320 Conn. 488 (meanings of statutory terms are "gleaned from the context of [their] use" (internal quotation marks omitted)). A defining characteristic of a "hearing or other proceeding" is that it be undertaken by a public agency that has the authority to conduct official business or to take action. Section 1-200 (2) provides in relevant part that "any hearing or other proceeding *of a public agency* . . . to discuss or act upon a matter *over which the public agency has supervision, control, jurisdiction or advisory power*" constitutes a "meeting."[6] (Emphasis added.) For a gathering of individuals who are members of a public agency to constitute a "hearing or other proceeding," therefore, it must be comprised of individual members of that public agency who have express authority to take action on behalf of the public agency. This authority may be conferred by statute, regulation, ordinance, charter, or other legal authority. Indeed, the regulations that govern the commission itself define "hearing" in relevant part as "that portion of the commission's *proceedings* in the disposition of matters *delegated to its jurisdiction by law* wherein an opportunity for the presentation of evidence and argument occurs. . . ." (Emphasis added.) Regs., Conn. State Agencies § 1-21j-1 (b) (9). Because a "hearing or other proceeding" does not require a quorum of a public agency's members to constitute a meeting, a group comprising less than a quorum of a public agency may conduct a "hearing or other proceeding" when it has the express authority to take action. This construction recognizes that public agencies conduct various types of business, not simply adjudicative activities, and furthers the policy of the act favoring disclosure of and public access to government records, rather than limiting the act's applicability to those public agencies that conduct adjudicative functions.

Although we agree with the commission that the practice of consulting standard dictionaries, rather than legal dictionaries alone, more appropriately illuminates the meaning of "hearing or other proceeding," the commission's analysis does not go beyond dictionary definitions and fails to consider the context of the term's use in § 1-200 (2). The commission would have us adopt a definition of "proceeding" without consideration of the fact that § 1-200 (2) provides that a gathering constitutes a "hearing or other proceeding" only when it is made up of a public agency gathering "to discuss or act upon

a matter over which the public agency has supervision, control, jurisdiction or advisory power." Concluding that a "hearing or other proceeding" includes all communications between government officials that constitute "a step in the process of agency-member activity," regardless of whether such group has authority to act, would render meaningless the quorum requirement in the second and third definitions of "meeting" under § 1-200 (2). We decline to construe § 1-200 (2) in such a manner. See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.)).

Moreover, a requirement that all communications between government officials that constitute "a step in the process of agency-member activity" be subject to the act's open meeting requirements would disrupt the orderly and efficient functioning of government in a manner that the act does not contemplate. The practical effect of the commission's proposed construction of the phrase would be that nearly all gatherings of any public officials—from meetings between a city councilor and a member of the public about a neighborhood concern, to staff meetings of the employees of a municipal department, to budget negotiation meetings between the governor and legislative leaders—would be subject to the act's open meeting requirements. As the amicus curiae notes, this would place a significant burden on government agencies that is beyond the scope of the language used in the act. See, e.g., General Statutes § 1-225 (setting forth various requirements for open meeting compliance); General Statutes § 1-228 (notice requirements for adjournment of public meetings); General Statutes § 1-229 (procedural requirements for continuation of hearing at public meeting).

As the commission acknowledged at oral argument before this court, its construction of "proceeding" would also discourage two members of different political parties from gathering because any such gathering would constitute a "meeting" subject to the open meeting requirements of the act, regardless of whether a quorum was present. By contrast, a group of individuals from the same political party, even if the group constituted a quorum of the public agency, would avoid the open meeting requirements of the act because that group would constitute a caucus, which is exempt from the definition of "meeting." See General Statutes § 1-200 (2) (providing in relevant part that " '[m]eeting' does

not include . . . a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency"). Because we construe statutes to avoid such an absurd result, we decline to construe "hearing or other proceeding" as "a step in the process of agency-member activity" for this additional reason. See, e.g., *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 803, 955 A.2d 15 (2008) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" (internal quotation marks omitted)). Should the commission seek greater change to the meaning of "hearing or other proceeding," the appropriate remedy is through the legislature, not this court. See, e.g., *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988) ("[I]t is up to the legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." (Internal quotation marks omitted.)).

Applying these principles to the facts of this case, we conclude that the gathering of the leadership group with the mayor and the retiring city manager was not a "hearing or other proceeding" of a public agency under § 1-200 (2). The mayor and the retiring city manager had no authority to create the city manager search committee. There is no evidence in the record that the leadership group was formed pursuant to any official resolution of the city council, and it had no independent, express authority to take any action regarding the formation of the search committee that could legally bind the city council.[7] There is no statute, ordinance, bylaw, or other legal source of power granting the leadership group any authority to act, either as a group or on behalf of the city council. Indeed, that is why the leadership group submitted the resolution to the full city council for its consideration and a vote.[8] See Meriden City Charter § C5-1 ("[t]he [c]ity [m]anager . . . shall be appointed . . . by the [c]ity [c]ouncil"). The commission acknowledges in its brief that it was the city council "as a whole" that had responsibility for hiring a new city manager. Accordingly, because the gathering of the leadership group with the mayor and the retiring city manager did not constitute a "hearing or other proceeding of a public agency," and, therefore, a "meeting," the gathering was not subject to the act's open meeting requirements.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* March 12, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We refer to the city and the city council collectively as the plaintiff.

[2] There is no dispute that the city council as a whole is a public agency within the meaning of § 1-200 (1) (A).

[3] "The Meriden Record Journal and Daniel Brechlin, an editor from that publication, were the complainants before the commission and were named

as defendants in the administrative appeal, but they did not participate therein.” *Meriden* v. *Freedom of Information Commission*, supra, 191 Conn. App. 651 n.3.

[4] General Statutes § 1-225 (a) provides in relevant part that “[t]he meetings of all public agencies . . . shall be open to the public. . . .”

[5] The commission contends that, because it has previously construed “proceeding,” and such construction has been subjected to judicial review, its construction of the statute should be entitled to some deference. Specifically, the commission points to one Appellate Court decision and four Superior Court decisions in support of its contention. See *Emergency Medical Services Commission* v. *Freedom of Information Commission*, supra, 19 Conn. App. 355; *Board of Education* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-99-0496503-S (June 6, 2000) (27 Conn. L. Rptr. 298); *Common Council* v. *Freedom of Information Commission*, Superior Court, judicial district of Middlesex, Docket No. CV-95-0074406-S (January 31, 1996) (16 Conn. L. Rptr. 163); *Town Council* v. *Freedom of Information Commission*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-95-0549602-S (January 24, 1996) (16 Conn. L. Rptr. 121); *Ansonia Library Board of Directors* v. *Freedom of Information Commission*, 42 Conn. Supp. 84, 600 A.2d 1058 (1991). We are not persuaded. These cases did not address whether a “proceeding” is “a step in the process of agency-member activity.” Moreover, the commission does not specifically argue before this court for a specific definition of “proceeding” but, rather, asks us to “select a definition of ‘proceeding’ that accords with the open meetings principles espoused in the legislative history . . . .” Finally, even if the cases relied on by the commission were applicable, we know of no authority to support the proposition that, once the Superior Court or the Appellate Court has construed a particular statute, we are thereby precluded from further considering the construction of the statute once an appropriate case has reached our state’s highest court.

[6] The parties have not specifically analyzed whether the leadership group of the city council itself constitutes a “public agency” as that term is defined in § 1-200 (1) (A). The commission concluded that “[t]he respondents are public agencies within the meaning of § 1-200 (1) . . . .” *Brechlin* v. *City Council*, supra, Docket No. FIC 2016-0066, p. 1. Given that the plaintiffs in this action are the full city council and the city of Meriden, the commission’s determination that they constitute public agencies does not inform whether the four individual members of the city council at the gathering constitute a “public agency.” We have no occasion here to address that separate question.

[7] We acknowledge that the commission concluded that “the gathering of the [leadership group] with the mayor and the city manager was at least *implicitly* authorized by the city council as a whole.” (Emphasis added.) *Brechlin* v. *City Council*, supra, Docket No. FIC 2016-0066, p. 6. As we have explained, however, for a gathering of individuals who are members of a public agency to constitute a “hearing or other proceeding,” it must be made up of individual members of that public agency who have *express* authority to take action on behalf of the public agency. There is no evidence that the leadership group has any express, or even implied, authority to take action on its own. Rather, the evidence simply demonstrates that the city council was aware that the gathering took place.

[8] The commission puts undue legal weight on the fact that the resolution was put on the city council’s consent calendar and was adopted without modification or change. The commission has not identified any basis to conclude that a member of the city council could not have asked to discuss or amend the resolution had he or she wanted to do so. The record reflects that the resolution was available for public discussion and public view, and that, by being placed on the consent calendar, “*unless a city-elected official asked for it to be removed from the consent calendar*, it would just get approved without discussion . . . .” (Emphasis added.) Indeed, the majority leader of the city council testified that the resolution “is always subject to full discussion, full public comment, full information gathering, people vot[ing] in favor of it, people deciding to vote against it, amending it . . . .” There is nothing in the record to suggest that council members’ authority to act independently with respect to voting on the resolution, or not voting on it at all, was compromised.